Mary C. Fleming, Vern J. Ambach, Evelyn J. Ambach, Milton R. Wismar, and Sophie L. Wismar, Respondents, v. Moore Brothers Realty Company, Inc., a Corporation, Robert W. Graham, Robert W. Graham, Inc., a Corporation, and Emerson Park Development Company, Inc., a Corporation, Appellants, No. 42684—251 S. W. (2d) 8.

Division One, July 16, 1952.

Motion for Rehearing or to Transfer to Banc Overruled, September 8, 1952.

*Shifrin & Shifrin* and *Levin & Hertzman* for appellants; Gideon H. *Schiller* and *Melvin L. Hertzman* of counsel.

*John C. Casey* for respondents.

DALTON, J.—Action by certain lot owners in Block No. 6198 in the city of St. Louis to enjoin the erection of a 36-family, 3-story apartment building on lots 4, 5, 6, 7, and 8 in said block, on the ground (1) that the proposed building and the use thereof was in violation of the new St. Louis Zoning Ordinance No. 45309 with respect to density, parking, height and front and rear yard lines; and (2) that construction had been commenced subsequent

to the effective date of said ordinance. Defendants have appealed from the final judgment which enjoined them from further proceedings with the erection of the building and required the removal of all construction from defendants' premises.

This court has jurisdiction of the appeal since the record affirmatively shows that the amount in dispute exceeds $7500 and, in this case, that means "the money value of the relief to plaintiff, or of the loss to defendant, should relief be granted, or vice versa, should the relief be denied." Frank Schmidt Planing Mill Co. v. Mueller, 347 Mo. 466, 147 S. W. (2d) 670, 671; Juden v. Houch (Mo. Sup.), 228 S. W. (2d) 668, 669; Sec. 3, Art. V, Constitution of Missouri 1945.

There is little dispute concerning the essential facts. While many issues are raised, the case turns upon a construction of the zoning and building codes of the city of St. Louis. Appellants contend that they were proceeding under a lawfully issued building permit, which was in full force and effect; and that Zoning Ordinance No. 45309 had no application to appellants' project.

Respondents and appellant Moore Brothers Realty Company, Inc., are the owners of lots in St. Louis City Block No. 6198, also known as Block 10 of the St. Louis Hills Subdivision. The Realty Company's lots are located on the east side of Jamieson Avenue at the corner of Jamieson and Neosho. Appellants Robert W. Graham, Robert W. Graham, Inc., and Emerson Park Development Company, Inc., are directly connected with the construction and are parties in interest. Terry Moore contracted for three of the lots in 1935 and obtained deeds in 1941. Frank Moore acquired a fourth lot (the corner lot) in 1949 and subsequently the Realty Company acquired a fifth lot. Plans for an apartment house were first suggested in the fall of 1949 and plans were drawn. The property at that time was zoned for commercial uses and Jamieson Avenue had been designated for a major highway. In addition, the plat of the subdivision and the restrictions in the deeds authorized commercial and business uses and provided that the frontage on Jamieson Avenue (Lots 1-8, Block 10) could be used for commercial and business purposes; and that the right to use for such purposes "shall never be abridged by imposing any new restrictions or amended restrictions."

After the plans for an apartment building were drafted, it was decided to attempt to obtain a Federal Housing Administration (F.H.A.) loan. On December 15, 1949, a formal application was submitted to the F.H.A. for title 608 financing. Due to suggested changes in the plans the additional lot was purchased. On February 28, 1950, an F.H.A. commitment in the amount of $211,800 was issued to the Mutual Bank and Trust Company, then a construction lender. To meet other F.H.A. requirements the appellant, Moore Brothers Realty Company, Inc., was formed and later took title to all of the said lots. Thereafter, bids were received for steel requirements, plumbing,

etc., and certain contracts were entered into. Various required city permits were applied for on March 1, 2 and 3, 1950. Much difficulty and delay was experienced in meeting F.H.A. requirements and in obtaining approval of all necessary documents and papers, but there was no evidence of lack of diligence or good faith in meeting requirements.

On April 25, 1950, a new comprehensive zoning ordinance (No. 45309) was adopted and the lots in question were zoned in the "C-4 family Dwelling District," effective May 26, 1950. In such "C-4 family Dwelling District," said ordinance among other provisions, prohibited the use of any multiple dwellings for more than four families; provided for a front yard having a depth of not less than twenty-five (25) feet; provided for a [11] rear yard of not less than twenty-five (25) feet in depth; and, in the "density of population" requirements thereof, provided for "a lot area of not less than eleven hundred (1100) square feet per family." The improvement, as contemplated, would not comply with the above provisions of the new zoning ordinance. Conferences were then held with the City Counselor's office and the appellants obtained a copy of an opinion which had been prepared in that office in 1949 with reference to zoning ordinance changes after permits had been issued. The opinion had been furnished to the City Building Commissioner on January 4, 1949, by Assistant City Counselor Frank Neun. The pertinent part of that opinion reads, as follows: " * * * In conclusion, therefore, all permits expire within one year after issuance unless the work has begun or the permit is extended. And it is obvious that all applications for permits for buildings prohibited by the proposed Zoning Ordinance must be denied after the effective date thereof. Likewise all permits previously issued for prohibited buildings, signs or fixtures, where neither a substantial amount of work has been begun nor binding contractual obligations or substantial expenses incurred, become a nullity and should be revoked by the Building Commissioner. However, permits previously issued would not be automatically revoked by the mere passage of the Zoning Ordinance, but should be revoked by the Building Commissioner according to conditions existing on the effective date of the Zoning Ordinance.

"To do this, it is suggested that upon passage of the proposed Zoning Ordinance, the Building Commissioner check all applications and permits to determine those where the building, sign or fixture would be prohibited by the new Ordinance. He should deny all such applications. As to permits where the work has begun, it may be continued to the full amount contemplated by the permit. Where the work has not begun, he should send written notice to the permit holder giving a time and place when he might be heard and might show cause why his permit should not be revoked because the contemplated structure is prohibited by the new Zoning Ordinance.

At such hearing the Building Commissioner must be satisfied that either substantial work was begun as of the effective date of the Zoning Ordinance, or that at the time permittee was legally bound under contracts and had incurred substantial expenses in reliance on the permit. Unless he is satisfied as to the above, it is his duty to revoke the permit. There is no rule as to what constitutes 'substantial work or expenses,' and so each case must be judged on its particular facts.''

Other facts are as follows: On May 3, 1950, the building site was surveyed and staked out by the Pitzman Surveying Company. On May 9, 10 and 11, a Smoke Permit and various assurances of utilities services were received. On May 11, 1950, a building permit for this specific improvement was issued by the Building Commissioner of the city of St. Louis, and, so far as this record shows, this permit was never canceled by any action of the Building Commissioner, or otherwise. On May 11, 1950, an interim title binder was issued by the Title Insurance Company on the property in question. On May 12, 1950, permanent loan arrangements were secured with the Bank of St. Louis. On or about May 15, 1950, some sod was salvaged from the building site. On June 15, 1950, a note in the sum of $211,800 was executed by the new corporation to the First National Bank in St. Louis, payable one year from date. This note was secured by an F.H.A. Deed of Trust encumbering the property in the amount of $211,800 in favor of the bank. On June 16, 1950, the deed of trust was recorded in the office of the Recorder of Deeds of St. Louis, at which time the note was identified as being secured by the deed of trust. F.H.A. closing was commenced on June 26, and completed on July 10, 1950, at which time the note in the sum of $211,800 was endorsed by the F.H.A. district manager, on behalf of the Federal Housing Commissioner and the note turned over to the First National Bank. After endorsement of the note by the F.H.A. on July [12] 11, 1950, bulldozers and other excavating equipment were moved to the construction site and excavation commenced on July 13, 1950. On July 24, 1950, the respondents demanded that appellants cease work on the project. On August 2, 1950, the present action was instituted. At that time excavation work had been practically completed and concrete pilings and foundation footings had been poured on about one-third of the site. After respondents failed to give a $7500 bond to support a temporary injunction, the construction work was carried on and, by September 20, 1950, one-third of the foundation was completed and the joists and subfloor laid. The construction work continued until appellants were permanently enjoined from proceeding with the project on January 24, 1951.

As stated, the new ordinance zoned the real estate in question in the ''C-4 family Dwelling District'' and provided that ''no build-

ing or land shall be used for a use other than those permitted in the district in which such premises are located, unless * * * such use existed prior to the effective date of this ordinance. * * * No building shall be erected * * * unless such action shall make the premises upon which it shall stand conform to the regulations for the district in which the premises are located, unless * * *.'' (The exceptions do not apply here). It further provided that '' * * * where this ordinance imposes a greater restriction upon the use of a building or premises or upon the height of a building, or requires larger open spaces than are imposed or required by other ordinances, rules, regulations, or permits, or by easements, covenants or agreements, the provisions of this ordinance shall govern.'' Said ordinance made no express provision for outstanding permits for construction theretofore issued by the building commissioner of the city of St. Louis under the Building Code or for non-conforming buildings then in the course of construction. Penalties for violation of the ordinance were provided. Other provisions included the following: ''In addition to the above remedies the City of St. Louis by its City Counselor may maintain an action for an injunction to restrain any violation of this zoning ordinance. And the right of any person owning property in any district where his rights may be affected or invaded by a violation of the terms of this ordinance to bring suit in any court of competent jurisdiction and obtain such remedies as may be available at law or in equity to protect his rights, is hereby recognized * * *. It shall be the duty of the Building Commissioner to enforce this ordinance. * * * A certificate of occupancy shall be required where there is a change in the use of land or where a new building is erected * * *. Such certificate of occupancy shall be issued by the Building Commissioner when after inspection it is found that the premises complies with the regulations of this ordinance. * * * No permit for the erection of any building shall be issued before application has been made for a certificate of occupancy. No building or premises may be occupied until such certificate shall have been issued.''

The Zoning Ordinance No. 45309 made no provision for the issuance of building permits for new construction. The issuance of such permits was under other ordinances, referred to as the Building Code. The Building Code (1945) required permits for new construction and provided that applications for permits be made to the building commissioner; and that permits be issued by him after inspection of the premises, if he deemed such necessary. The Building Code further provided: ''Except as otherwise in particular instances expressly set forth, any provision of this Code which is in conflict with the provisions of any other ordinance shall have precedence, to the extent only of such conflict, over the provisions of such other ordinance. * * * No structure of any nature shall hereafter be

erected, * * * nor shall any occupancy hereafter be started, continued, changed or modified except in accordance with the provisions hereof, and the occupation or use of any structure except in conformity with the provisions hereof is hereby prohibited. * * * The building commissioner, or the designated official, shall examine all applications for permits, with the accompanying plans, [13] specifications and records of survey submitted, and shall approve any such application if the proposed work conforms to the provisions of this Code and the general ordinances * .* *. If plans and specifications are approved, a permit for the work proposed to be performed shall be issued upon payment of required fees. * * * No permit shall be issued for the erection of any structure until application for a certificate of occupancy or use shall have been filed with the Building Commissioner and approved by him as covering an occupancy for use complying with the requirements of the Zoning Ordinance and of this Code, nor shall such structure be occupied or used prior to the issuance of such certificate. * * * Except where work under the terms of any permit shall have been begun and pursued with reasonable continuity within one year of the date thereof, and except where the building commissioner, or designated official, shall deem it proper to extend the period thereof, such permit shall expire by limitation within one year from the date of issue or approval thereof. * * * Structures of any type existing at the time of enactment of this Code, and structures for which at that time permits have been issued, shall not be required to be changed in construction or in the occupancy or use designated therefor in such permit, under the following conditions: (a) Construction thereof shall have been or will be started within a reasonable time of the issuance of the permit; and (b) Construction conforming to the plans approved and filed with the building commissioner at the time of the issuance of permit shall be diligently carried to conclusion.'' (Bldg. Code 1945, Secs. 4, 7, 23, 28, 34, 37). Section 43 provided for revocation of permits under certain conditions. Section 270 provided: ''The term zoning ordinance shall for the purpose of this Code be deemed to include all zoning ordinances and amendments in effect in the city at the time of application for any permit required by this Code.''

On May 11, 1950, all requirements of the Zoning Ordinance and Building Code then in effect were duly met for the issuance of the permit for the construction of the apartment building in question, and such permit was issued, and there is no contention that it was not properly and validly issued when it was issued.

Appellants first contend that the court erred in entering the injunction for the reason that appellants had a valid building permit, which was not revoked nor invalidated by Zoning Ordinance No. 45309; and that Ordinance 45309 was not intended to and did not repeal or revoke the provisions of the Building Code. Appellants ar-

gue that their permit was issued in compliance with both the Building Code and the existing Zoning Ordinance; that, under the provisions of the Building Code, the Zoning Ordinance in effect when the permit is applied for controls; that the permit continues in full force and effect, if the work commences within one year from the date of issuance; that the issuance of a permit under the Building Code was not affected by the adoption of a new zoning ordinance; and that there is no conflict between the Zoning Ordinance No. 45309 and the Building Code (1945) when both are read and construed together, as a harmonious whole, and all provisions are given effect.

Respondents contend that the new zoning ordinance prohibited the construction and use of the building when work started; that appellants held their property subject at all times to every valid exercise of the police power of the city of St. Louis to amend its Zoning Ordinances; that no work done nor obligations incurred by appellants prior to the issuance of the building permit could give appellants any vested rights to construct the apartment building *after* the effective date of the new zoning ordinance; that, on the record presented, no substantial work was done and no material expenses were incurred (in reliance upon the permit) after the date of its issuance and prior to the effective date of the ordinance; and that all work done on the building was in violation of the new zoning ordinance. Respondents insist that there is no evidence of any substantial expenditures made or work done, nor any substantial binding contracts entered into *in reliance upon the building permit* and [14] *prior to the effective date of the new ordinance* on May 26, 1950. Respondents, therefore, contend that appellants acquired no vested right to proceed with the improvement in direct violation of the terms and provisions of the ordinance. Respondents' theory apparently is that regardless of the proper and valid issuance of the permit on May 11, 1950, such permit was automatically canceled, revoked or superseded, without notice or a hearing, immediately upon the new zoning ordinance becoming effective. In any event respondents contend that the building permit, as lawfully issued on May 11, 1950, afforded appellants no protection *after* the effective date of the new ordinance, since respondents insist that appellants were acting *in violation* of the new zoning ordinance after its effective date.

In this connection, appellants concede that actual construction of the project did not start until July 13, 1950. Appellants claim no vested rights prior to the effective date of the new zoning ordinance, but, if construction was lawfully started and continued thereafter, under the building permit, appellants obtained and possessed vested rights to continue with the improvement prior to any action by respondents.

Respondents rely upon the case of State ex rel. Oliver Cadillac v. Christopher, 317 Mo. 1179, 298 S.W. 720, 726. That was a mandamus

action to require the building commissioner of the city of St. Louis to issue a permit to relator to construct an automobile showroom building in a district limited to multiple dwellings by a zoning ordinance not then effective. The application for the permit, which complied with the then existing ordinances, was filed *two days* before the Zoning Ordinance became effective and the permit was denied on the ground that erection of the building would violate the provisions of the Zoning Ordinance which would go into effect two days later. The action of the trial court in awarding a peremptory writ of mandamus was reversed. In the course of the opinion the court said: "The fact that respondent filed its application for a permit before the ordinance went into effect is no reason why it should not be held applicable to respondent from and after it became operative. Respondent held its property subject at all times to every valid exercise of the police power. The filing of its application gave it no vested right. * * * Had the permit been granted on the date it was applied for, it would have conferred upon respondent no additional property right; it would merely have rendered respondent immune from prosecution for violation of the city's building code."

In that case no building permit was ever issued and no question concerning the construction of the Building Code in connection with the Zoning Ordinance was presented or ruled.

Respondents also rely upon the case of Kingshighway Presbyterian Church v. Sun Realty Company, 324 Mo. 510, 24 S.W. (2d) 108. That was an action in equity whereby the plaintiffs (lot owners) sought to enjoin the defendants from erecting a gasoline filling station in violation of a zoning ordinance. The trial court dismissed the action and plaintiffs appealed to this court, where it was held that this court had *no jurisdiction* of the appeal and the case was transferred to the St. Louis Court of Appeals. While the court ruled that it had *no jurisdiction* of the appeal, the opinion states: "The ordinance, *if retroactive,* would not disturb any vested right of defendant, because on the effective date of the ordinance it had no vested right to either build or operate the filling station at the place in question * * *." (Italics ours)  (24 S.W. (2d) 108, 111).

It is apparent that no issues similar to the issues here presented were considered or ruled in either of the cases relied upon by respondents. Neither case is in anywise controlling here.

There can be no doubt that "every citizen holds his property subject to the valid exercise of the police power" or that the mere granting of a permit to construct a building confers no *vested* right to construct such building, if the construction thereof in fact is in *violation* of a zoning ordinance. However, the question here is whether appellants' apartment building was, in fact, being constructed in violation [15] of the new zoning ordinance. The answer to that question requires a construction of the new zoning ordinance. Unless appellants

were proceeding in violation of the zoning ordinance, the respondents had no right to the injunction.

▮ Zoning regulations are distinct in character from building regulations but such regulations are not necessarily inconsistent with each other and both sets of regulations may remain in full force at the same time. 62 C. J. S. 409, Sec. 224. Both zoning regulations and buildings regulations rest upon the police power. In construing an ordinance of a city we may apply the same general rules of construction as are applicable to the statutes of the state. Automobile Gasoline Co. v. City of St. Louis, 326 Mo. 435, 32 S.W. (2d) 281, 284(5); 37 Am. Jur. 826, Municipal Corporations, Sec. 187; 62 C.J.S. 841, Sec. 442.

"It is a fundamental rule of statutory construction that sections and acts in pari materia, and all parts thereof, should be construed together, and compared with each other. No one act, or portion of all the acts, should be singled out for consideration apart from all the legislation on the subject." 50 Am. Jur. 343, Statutes, Sec. 348. "Under the established rules of statutory construction where there are two laws relating to the same subject they must be read together and the provisions of the one having a special application to a particular subject will be deemed to be a qualification of, or an exception to, the other act general in its terms. Eagleton v. Murphy, 348 Mo. 949, 156 S.W. (2d) 683, 685.

" * * * where there are two acts, and the provisions of one have special application to a particular subject and the other is general in its terms and if standing alone would include the same matter and thus conflict with the special act, then the latter must be construed as excepted out of the provisions of the general act, and hence not affected by the enactment of the latter. This, of course, on the assumption that the general act is in other respects valid, and would, but for the exception, suffice to prescribe thereafter the county court's course of procedure." State ex inf. Barrett v. Imhoff, 291 Mo. 603, 238 S.W. 122, 125(7).

" 'While the rule is that a general affirmative act, or the general provisions of an act, without express words of repeal, ordinarily will not repeal or affect a previous special or local act on the same subject, yet it is not a rule of positive law, but one of construction only; a special act may be impliedly repealed by a general one and the question whether it has been so repealed is always one of legislative intention.' Schott v. Continental Auto Ins. Underwriters, 326 Mo. 92, 31 S.W. (2d) 7; 59 C.J. § 536." State ex rel. Crutcher v. Koeln, 332 Mo. 1229, 61 S.W. (2d) 750, 755(14).

Both the Building Code and the Zoning Ordinance cover the construction and occupancy of new buildings in the city of St. Louis. Both ordinances refer to the building commissioner and to building permits as hereinbefore set out. Only the Building Code expressly

provides for the issuance of building permits and fixes their duration. The Building Code expressly provides for compliance with both the Building Code and the Zoning Ordinances and designates what Zoning Ordinances apply.

While it may appear that the Zoning Ordinance and the Building Code are in conflict yet if they can be read together and harmonized, no part of the Building Code is repealed by implication. Repeals by implication are not favored, and while the repeal of a statute by a subsequent statute is a question of intention, the presumption is against an intention to repeal where express terms are not used. State ex rel. St. Louis Police Relief Ass'n. v. Igoe, 340 Mo. 1166, 107 S.W. (2d) 929, 931; 37 Am. Jur. 835, Sec. 198. All provisions of the Building Code and Zoning Ordinance No. 45309 must be given effect unless the provisions of the latter ordinance are in irreconcilable conflict with the former. Petty v. Kansas City Public Service Co., 355 Mo. 824, 198 S.W. (2d) 684, 686 (3, 4). The new **[16]** Zoning Ordinance did not specifically refer to buildings in the course of construction, nor to outstanding permits for the construction of buildings which would not conform to the uses and provisions therein provided. As stated, the new Zoning Ordinance contains no provision expressly or otherwise providing for the cancellation or revocation of outstanding permits validly issued prior to its effective date.

While the new Zoning Ordinance expressly recognizes the issuance of building permits, it contains no provisions with reference to what applications therefor shall contain or as to who shall issue them. There can be no doubt that, in effect, the new Zoning Ordinance recognizes that building permits are issued for new construction; and that the Building Code governs the issuance of such building permits. The provisions of the Building Code must be read and considered with the provisions of the Zoning Ordinance.

As a general rule, a zoning ordinance is operative from its effective date and has no retroactive effect, unless the ordinance expressly so states. 62 C.J.S. 483, Sec. 226(16) (b). "In the construction of statutes the uniform rule is that they must be held to operate prospectively only, unless the intent is clearly expressed that they shall act retrospectively, or the language of the statute admits of no other construction." Jamison v. Zausch, 227 Mo. 406, 126 S.W. 1023, 1027; Lucas v. Murphy, 348 Mo. 1078, 156 S.W. (2d) 686, 690. The same rule applies to city ordinances. 37 Am. Jur. 833, Municipal Corporations, Sec. 195; 62 C.J.S. 857, Sec. 443(c). While Section 20 of Ordinance No. 45309 clearly covers the future ("No permit * * * shall be issued * * *"), it does not purport to cancel or annul permits previously issued. When the Building Code provisions are construed with the provisions of the new Zoning Ordinance on the matter of permits, we find nothing to show an intention that the new Zoning Ordinance operated retroactively with reference to build-

ing permits already issued and outstanding, and we do not reach the point as to whether appellants had acquired a *vested* right to use the property in the particular manner in question. We agree with respondents that no property is exempt from subsequent building and zoning regulations, unless the owner has acquired a vested right to use the property in a particular manner. 62 C.J.S. 509, Sec. 227(3) (b). In this case appellants do not contend the building permit remained in full force and effect on the effective date of the new Zoning Ordinance because of their having acquired a *vested* right to continue construction because of substantial work performed or binding contracts entered into in reliance on the permit and prior to the effective date of the new Zoning Ordinance. Appellants' position is that the ordinance applied prospectively; that outstanding permits issued under the Building Code remained in force; and that, unless the permit was revoked or canceled by the building commissioners, appellants could proceed with the building without violation of the new Zoning Ordinance.

It is well recognized that existing projects for which permits have been issued may be exempted from the operation of subsequently enacted zoning regulations. City of New Britain v. Kilbourne, 109 Conn. 422, 147 A. 124. ''Rights under permits previously granted may be saved by express provision of zoning or other ordinances. Sometimes such exempton is granted where construction under the permit is started within a designated time after the enactment of the zoning ordinance.'' 58 Am. Jur. 1042, Zoning, Sec. 186. On the other hand, ''A number of cases sustain the express or implied revocation of a building permit where, subsequent to its issuance, the city passes a valid ordinance which has the effect of prohibiting the erection of a building such as the one in question, and, under some decisions, this is true even though the grantee of the permit has entered into contracts, bought material, or incurred other expenses. * * * The rule prevails particularly where a permit is obtained, not in good faith, but in anticipation of the enactment of a zoning law, or an amendment thereto, or where the holder of the permit has done nothing of a substantial character toward the construction of the building before the enactment of the zoning ordinance or amendment.'' 58 Am. Jur. [17] 1041, Zoning, Sec. 185; 9 Am. Jur. 204, Sec. 8. In this case, reading the Zoning Ordinance with the Building Code, there was no express or implied revocation of appellants' permit.

Since no question is presented with reference to the *vested right* of the appellants to proceed with the construction of the project on the effective date of the new Zoning Ordinance, we need not review the evidence concerning the action of appellants between the date of the issuance of the permit and the effective date of the new Zoning Ordinance. We may assume that no substantial work was done nor expenses incurred during this period. We may also assume without de-

ciding that, on the effective date of the new Zoning Ordinance, the building permit theretofore issued to appellants was subject to revocation or cancellation by the Building Commissioner on notice and hearing. See, 62 C.J.S. 520, 227(7); 9 Am. Jur. 204, Buildings, Sec. 8; 58 Am. Jur. 1041, Zoning, Sec. 185; Revocability of Municipal Building Permits, 40 A. L. R. 928. Since there was no evidence that appellants' building permit had been revoked or canceled, we must assume that it was not canceled, unless by the force and effect of the new Zoning Ordinance. We have held that it was not so revoked or canceled. It follows that appellants were not violating the new Zoning Ordinance when the action was instituted and that respondents were entitled to no relief.

The judgment is reversed and plaintiffs' petition is dismissed. All concur.