OLIVETTE E. VEAL, (Plaintiff) Appellant, v. CITY OF ST. LOUIS, a Municipal Corporation, (Defendant) Respondent, No. 45102— 289 S. W. (2d) 7.

Division One, March 12, 1956.

Motion for Rehearing or to Transfer to Banc Overruled, April 9, 1956.

*Ackerman & Schiller* and *Timothy R. Veal* for appellant.

838

*Samuel H. Liberman,* City Counselor, and *John J. Shanahan,* Associate City Counselor, for respondent.

[9] VAN OSDOL, C.—This is an appeal from a judgment of dismissal of plaintiff's action for injunctive relief, and for a judg-

ment declaring that she has the right to conduct a funeral establishment in her property located at 4311 Page Boulevard in St. Louis by virtue of an occupancy Permit No. S4567 issued by the Building Commissioner of the City of St. Louis.

For many years plaintiff's property was used as a residence, and there was evidence that its value as a residence is approximately $12,500, but that its value equipped as a funeral establishment is approximately $21,000. Consequently, the money value of the relief sought by plaintiff, if granted, would be in excess of $7,500, exclusive of costs. This court has appellate jurisdiction of the case. Const. Art. V, § 3, V.A.M.S.; Fleming v. Moore Bros. Realty Co., 363 Mo. 305, 251 S.W.2d 8.

The case involves questions of the application of the doctrine of *res judicata;* and of the construction of provisions of the Building Code, Part I of the Revised Code of St. Louis, and of Ordinance No. 45309, approved April 25, 1950, effective thirty days thereafter.

May 13, 1950, the Building Commissioner had issued an alteration Permit No. S4566 granting plaintiff permission to alter her two-story brick building on Page in accordance with the provisions of the City Ordinances and application filed with the Building Commissioner, "said building to be used as Funeral Home." On the same day, May 13th, the Building Commissioner had issued occupancy Permit No. S4567. Under the old Zoning Ordinance No. 35003 (as amended by Ordinance No. 35009), effective May 26, 1926, plaintiff's property had been zoned for commercial use, but, as stated, the property had been used as a residence for years. Under Ordinance No. 45309, a new "Comprehensive Zoning Ordinance," sometimes hereinafter referred to as the "Zoning Ordinance," the property was rezoned and classified as "C" Four-Family Dwelling District.

August 17, 1950, Block Unit 48 (property owners and residents of the 4800 block on Page) filed an appeal with the Board of Adjustment of the City of St. Louis requesting the revocation of Permit No. S4566. In the application for appeal it was recited that the permit was issued May 13, 1950, under Ordinance No. 35009. And on September 13, 1950, the appeal was considered by the Board. In the record of the appeal, the name of plaintiff, Olivette E. Veal, was nowhere mentioned, but the proceeding progressed as if plaintiff's husband, Timothy R. Veal, were the owner. The Board of Adjustment sustained the appeal having found "that the 1950 ordinance (Ordinance No. 45309) has placed this property in the 'C' four-family dwelling district, and the holder of the permit has not expended an appreciable sum of money to carry out the work for which it was issued, and has not established nonconforming use. To allow the permit to remain in force would be a distinct detriment to this predominately residential neighborhood."

In a subsequent proceeding on certiorari for the Circuit Court review of the decision of the Board of Adjustment, plaintiff joined with her husband. In the application for the writ, it was stated, inter alia, that the Building Commissioner had granted alteration Permit No. S4566 and occupancy Permit No. S4567; that the applicants had offered into evidence the Permits Nos. S4566 and S4567 at the hearing before the Board of Adjustment; that on or about the 17th day of August, 1950, the Secretary of the Board of Adjustment had written the Building Commissioner advising that the appeal had been filed and inquired of the Building Commissioner "as to his action on such matter"; and that the Building Commissioner had refused to revoke Permit No. S4566. On certiorari, the Circuit Court of the City of St. Louis reviewed and affirmed the decision of the Board of Adjustment, and on subsequent appeal to the St. Louis Court of Appeals, the Circuit Court's judgment affirming the decision of the Board of Adjustment was affirmed. Veal v. Leimkuehler, Mo. App., 249 S.W.2d 491.

Subsequently, plaintiff herein, joining with her husband Timothy R. Veal, filed in the Circuit Court of the City of St. Louis their motion in the nature of a writ of error coram nobis to set aside the Circuit Court's former judgment affirming the decision of the Board of Adjustment, in which motion it was alleged that the Board of Adjustment did not have jurisdiction to revoke either a building permit or a certificate of occupation lawfully issued, and that, had the court been apprised of the assertedly applicable ordinances, the Circuit Court would have set aside the decision of the Board of Adjustment. The Circuit Court dismissed the (coram nobis) motion, and upon appeal to the St. Louis Court of Appeals the judgment of dismissal was affirmed. Veal v. Leimkuehler, Mo. App., 267 S.W.2d 387.

In the latter opinion, the St. Louis Court of Appeals recognized that the appeal in the original proceeding was from the action of the Building Commissioner in refusing to revoke permits for the establishment of a commercial use in a residential district, in violation of Section 5A(1) of Ordinance No. 45309; and the reviewing court further observed that the Board had jurisdiction over the subject matter, and that jurisdiction over the parties had not been questioned. In reviewing the case, the St. Louis Court of Appeals examined the contention of plaintiffs-appellants in that case that, under the Building Code, the Board of Adjustment did not have jurisdiction to render the particular decision, and that the trial court would not have affirmed the judgment had it known of the provisions of the Building Code. However, the reviewing St. Louis Court of Appeals ruled it could not follow the contention for the reason that to do so would amount to nothing more than to countenance "the use of the motion

in the nature of a writ of error coram nobis to correct errors of law . . .." (267 S.W.2d at page 390).

Herein, plaintiff-appellant renews her contention that the Board of Adjustment had no jurisdiction or power to act in the revocation of the alteration of Permit No. S4566. And she further contends herein that the decision of the Board of Adjustment and subsequent judgments of the Circuit Court on certiorari and of the St. Louis Court of Appeals on appeal were void; and that, inasmuch as occupation Permit No. S4567 has not been expressly revoked, both permits are now validly outstanding.

It is contended by defendant-respondent City that the decision of the Board of Adjustment, as reviewed by the Circuit Court and in turn by the St. Louis Court of Appeals (Veal v. Leimkuehler, supra, 249 S.W. 2d 491), is *res judicata* of the issues of the instant case, and with this contention we agree.

In arriving at this conclusion we have examined Section 19 of Ordinance 45309 with reference to appeals to the Board of Adjustment, in which Section 19 (in subsection "C" thereof) it is provided that appeals to the Board of Adjustment "may be taken by any person aggrieved or by any officer, department, board or bureau . . . affected by any decision of the Building Commissioner . . .." See also Section 89.100, RSMo 1949, V.A.M.S. We have also examined subsection "D" of Section 19, providing that the Board of Adjustment shall have the power to "hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by the Building Commissioner . . . in the enforcement of this ordinance," and that the Board of Adjustment may "in conformity with the provisions of law, reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from, and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the Building Commissioner . . .." See also Section 89.090, RSMo 1949, V.A.M.S. And we have examined Sections 27, 28, 29 and 41 of Part I (Building Code) of the Revised Code of St. Louis, which Sections are in part as follows,

"Sec. 27. PERMITS REQUIRED.—Except for minor repairs as hereinafter defined no [11] sign, booth, structure, device, apparatus or equipment of any nature which is governed by the requirements of this Code, shall be installed, altered, repaired, erected, moved, removed or demolished, until application for permit therefor shall have been made to and approved by the building commissioner or designated official and a permit issued by him for inspection of the premises, if he deems such necessary.

. . .

"Sec. 28. COMPLIANCE WITH ZONING ORDINANCE REQUIRED.—No permit shall be issued for the erection of any

structure until application for a certificate of occupancy or use shall have been filed with the building commissioner and approved by him as covering an occupancy for use complying with the requirements of the zoning ordinance and of this Code, nor shall such structure be occupied or used prior to the issuance of such certificate. . . .

"Sec. 29. CHANGE IN OCCUPANCY.—There shall be no change in the type of occupancy of any structure except in accordance with the provisions of this Code. . . .

"Sec. 41. OCCUPANCY PERMIT.—Upon completion or alteration of a structure in conformity with this Code, the building commissioner shall issue to the owner, upon application, an occupancy permit under which the structure may be used, . . .."

As this court stated in Fleming v. Moore Bros. Realty Co., supra, 363 Mo. 305 at pages 315-316, 251 S.W.2d 8 at page 15, both the Building Code and the Zoning Ordinance cover the construction and occupancy of new buildings in the City of St. Louis (to which we now add that both the Building Code and the Zoning Ordinance also cover alteration, and the occupancy of altered buildings). It seems that only the Building Code expressly provides for the issuance of building or alteration permits and fixes their duration; but the Building Code and Ordinance 45309 both expressly provide for the issuance of certificates of occupancy. Sections 28 and 41, Building Code, supra; Section 20, Ordinance No. 45309 (Zoning Ordinance).

Under the general regulatory provisions of the Zoning Ordinance, in Section 5 thereof, it is provided,

"A1. No building or land shall be used for a use other than those permitted in the district in which such premises are located unless (a) such use is permitted by other provisions of this Section or by Sections 18 (Use, Height, and Area Exceptions) or 19 (Board of Adjustment) or (b) such use existed prior to the effective date of this ordinance.

"A2. No building shall be erected, placed, enlarged or structurally altered unless such action shall make the premises upon which it shall stand conform to the regulations for the district in which the premises are located, unless authorized by the provisions of Section 18 (Use, Height and Area Exceptions) or Section 19 (Board of Adjustment) or B.4 of this Section."

Addressing ourselves to Sections 27, 28, 29 and 41 of the Building Code, and also particularly to the quoted subparagraphs A1 and A2 of Section 5 of the Zoning Ordinance, we believe the Building Commissioner, when acting in the issuance of permits for the erection or alteration as provided in the Building Code, has the dual duty of ascertaining that the contemplated use of the building to be erected or altered is in compliance with the Building Code and the Zoning Ordinance. At least it would seem the quoted provisions of

the Sections of the Building Code are in pari materia with the zoning for "use" provisions of the Zoning Ordinance. As stated, the Building Code and the Zoning Ordinance both provide for occupancy permits and provide for their issuance by the Building Commissioner. Herein we have a question primarily of zoning for use, and the building or alteration permit and the occupancy permit for a particular use must of necessity comply with the provisions of the Zoning Ordinance. And it would seem that, in this connection at least, neither the building or alteration [12] permit for the erection or alteration of a building in contemplation of a particular use nor the occupancy permit for occupancy in such use are valid, if in conflict with the use provisions of the Zoning Ordinance; that either or both may be revoked by the process of administrative procedure provided in the Zoning Ordinance; and that, from a practical administrative or regulatory standpoint and legally, neither should be considered to be validly outstanding if one is determined to be in conflict with the zoning provisions of the Zoning Ordinance.

In the Building Code an appeal is provided to the Board of Building Appeals whenever the Building Commissioner rejects or refuses to approve the mode or manner of construction proposed to be followed, or materials to be used in the erection or alteration of a building or structure, or when it is claimed that an equally good or more desirable form of construction can be employed in any specific case, or that the provisions of the Building Code do not apply, or that the true meaning of the Code, or any regulations thereunder, have been misconstrued or wrongfully interpreted. Section 2354, Part I (Building Code), Revised Code of St. Louis. The same Section expressly provides that "no such appeal may be taken from any order or ruling from which an appeal lies to the board of adjustment established by the Zoning Ordinance." It should follow that when questions of the propriety of the administration of the Zoning Ordinance are in issue, as, for example, where the nonconforming use of property is brought into issue, the appeal from some act of the Building Commissioner affecting the zoning provisions of the Zoning Ordinance is to the Board of Adjustment.

" 'It is a fundamental rule of statutory construction that sections and acts in pari materia, and all parts thereof, should be construed together, and compared with each other. No one act, or portion of all the acts, should be singled out for consideration apart from all the legislation on the subject.' 50 Am. Jur. 343, Statutes, Sec. 348. 'Under the established rules of statutory construction where there are two laws relating to the same subject they must be read together and the provisions of the one having a special application to a particular subject will be deemed to be a qualification of, or an exception to, the other act general in its terms.' Eagleton v. Murphy, 348 Mo. 949, 156

S.W.2d 683, 685, 138 A.L.R. 749." Fleming v. Moore Bros. Realty Co., supra, 363 Mo. 305, 251 S.W.2d 8.

With this principle of construction in mind, and having a regard for the provisions of the Building Code and Zoning Ordinance quoted supra, we hold the Board of Adjustment had jurisdiction and the power to review the act of the Building Commissioner in refusing to revoke the alteration permit, in this case where the real issue was whether or not plaintiff should have the right to a use different from that for which the property was zoned in the subsequently enacted Zoning Ordinance.

Plaintiff-appellant has relied on Fleming v. Moore Bros. Realty Co., supra, 363 Mo. 305, 251 S.W.2d 8, in support of her contention that occupancy Permit No. S4567 protects her in her use of her property as a funeral establishment. In the Fleming case this court ruled that the subsequently enacted Zoning Ordinance, in itself, effected no express or implied revocation of a building permit validly outstanding at the time the Ordinance took effect. It is important to notice that in the Fleming case the permit had not been revoked by administrative procedure provided in the Zoning Ordinance.

We have expressed the opinion that the revocation (by the Board of Adjustment) of the alteration permit (on the theory that the alteration of the building was for a contemplated use different from that for which the property was zoned in the subsequently enacted Zoning Ordinance) was, in effect, also a revocation of the occupancy permit. Yet it may be conceded that more appropriate procedure would have expressly revoked both permits. However, as stated, the application for the writ of certiorari, in which application plaintiff joined with her [13] husband, recited that both permits were in evidence before the Board of Adjustment. We have examined the record of the original proceeding before the Board of Adjustment, which record discloses that evidence was introduced tending to refute and support plaintiff's right to use her property as a funeral establishment in nonconformance with the subsequently enacted Zoning Ordinance. The evidence introduced at the hearing has been correctly summarized by the St. Louis Court of Appeals (249 S.W.2d at pages 493-494). As we see it, the ultimate issue decided by the Board of Adjustment was the right to use plaintiff's building as a funeral establishment, and the underlying or supporting issues were whether plaintiff had acquired a vested right to such use by making substantial expenditures in reliance on the permit, and whether plaintiff had established a nonconforming use prior to the effective date of the new comprehensive Zoning Ordinance. Veal v. Leimkuehler, supra, 249 S.W.2d 491. See also Vol. 8, McQuillin, Municipal Corporations, 3d Ed., §§ 25.156 and 25.157, pp. 270-274; Vol. 1, Rathkopf, The Law of Zoning and Planning, 3d Ed., p. 907.

Now, as we have stated supra, plaintiff Olivette E. Veal, the owner of the property at 4311 Page Boulevard to whom alteration Permit No. S4566 and occupancy Permit No. S4567 were issued, apparently did not actually appear as a party in the proceeding before the Board of Adjustment. Nevertheless, as stated, she joined with her husband in an application for the writ of certiorari to review the decision of the Board of Adjustment. Obviously her participation or intervention in the proceedings was in the protection of her rights and interests as an owner of the property and holder of Permits Nos. S4566 and S4567. And nowhere in the original proceeding or in any subsequent review thereof was any question raised as to jurisdiction over plaintiff as a party. Veal v. Leimkuehler, supra, 267 S.W.2d 387. Consequently, in this case, we have the opinion that her right or interest in the subject matter of the proceeding must have been voluntarily submitted by her to the consideration of the Board of Adjustment and of the Circuit Court on certiorari, and that the affirming judgment of the Circuit Court affirmed by the St. Louis Court of Appeals (249 S.W.2d 491) was conclusive on her. Leahy v. Mercantile Trust Co., 296 Mo. 561, 247 S.W. 396; State ex rel. Kern v. Stone, 269 Mo. 334, 190 S.W. 601; Wood v. Ensel, 63 Mo. 193; Vol. 50, C.J.S., Judgments, § 784, pp. 320-321.

It is our conclusion that plaintiff's right to use her property as a funeral establishment has been finally adjudicated adversely to her.

The judgment should be affirmed.

It is so ordered. *Coil* and *Holman,* CC., concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.