The LAMAR COMPANY, LLC, d/b/a
Lamar Advertising of Kansas
City, Appellant,

v.

The CITY OF KANSAS CITY,
Missouri, Respondent.

No. WD 71545.

Missouri Court of Appeals,
Western District.

Nov. 9, 2010.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 21, 2010.

Application for Transfer
Denied March 1, 2011.

768

Mary Jo Shaney, James C. Bowers, Jr., and Patricia R. Jensen, Kansas City, MO, for Appellant.

Galen Beaufort, City Attorney, M. Margaret Sheahan Moran, Senior Associate City Attorney, Kansas City, MO, for Respondent.

Before Division I: JAMES M. SMART, JR., Presiding Judge, and MARK D. PFEIFFER and CYNTHIA L. MARTIN, Judges.

MARK D. PFEIFFER, Judge.

The Lamar Company, LLC ("Lamar") appeals the judgment of the Circuit Court of Jackson County ("trial court") granting the motion for summary judgment of the City of Kansas City ("City") relating to the validity of a municipal ordinance. In its sole point on appeal, Lamar argues that the trial court erred in concluding that the ordinance in question was a building code ordinance and not a zoning ordinance— subject to the special notice and hearing requirements before passing zoning ordinances. The appeal is dismissed as moot.

## Factual and Procedural History

On September 6, 2007, City passed ordinance number 070887 ("Digital Sign Ordinance"), which stated, in part, that "No outdoor advertising sign may have any revolving, moving, flashing, blinking, or animated characteristics." The Digital Sign Ordinance was passed as an amendment to Section 80–350, City's zoning code. Amendments to this code require that changes go before the city plan commission. The city plan commission must then provide public notice of the proposed changes and hold public hearings on the proposed changes. It is undisputed that all notice and hearing requirements were properly followed by City in its passage of the Digital Sign Ordinance.

After the Digital Sign Ordinance passed, Lamar filed a petition for referendum on the Digital Sign Ordinance, which ultimately failed to obtain a sufficient number of signatures, but had the practical effect of delaying the effective date of the Digital Sign Ordinance until November 9, 2007. *Notably, however, it is undisputed that the Digital Sign Ordinance did, in fact, become effective on November 9, 2007.*

On September 27, 2007, City passed ordinance number 071017, as amended ("Pending Sign Legislation Ordinance"), amending Section 18–213 of City's building code. The Pending Sign Legislation Ordinance states as follows, in pertinent part:

BE IT ORDAINED BY THE COUNCIL OF KANSAS CITY:

Section 1. That Chapter 18, Code of Ordinances is hereby amended by adding a new section 18–213, to read as follows:

**Section 18–213. Pending Sign Legislation.**

During the consideration of an amendment to this Code that has been introduced before the City Council, *and until such amendment is enacted (effective) or rejected according to law,* the building official shall take no action on any application for a permit that would allow the erection or alteration of a sign that would be prohibited by the proposed amendment if enacted. Notwithstanding the foregoing, the building official shall not delay the issuance of any permit for a period longer than six months from the date of permit application because of this section.

(Emphasis added.)

Based upon the Pending Sign Legislation Ordinance, the City held all pending sign permit applications for conversions of existing billboards to digital billboards in abeyance, including permit applications that had been submitted by Lamar on September 4, 2007.

Lamar challenged City's basis for refusing to process the pending permit applications on the grounds that City should have processed them based upon the ordinances in effect at the time the permit applications were presented.[1] Lamar sought a declaratory judgment from the trial court declaring that the Pending Sign Legislation Ordinance was invalid and unenforceable. City moved for summary judgment on the declaratory judgment petition, and the trial court granted City's motion. Lamar timely appealed.

**Standard of Review**

Because the issue of whether summary judgment was proper is a question of law, our review of the grant of summary judgment is essentially *de novo.* *ITT Commercial Fin. Corp. v. Mid.–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

**Discussion**

In its sole point on appeal, Lamar argues that the trial court erred in granting summary judgment because Lamar claims the Pending Sign Legislation Ordinance was a *zoning,* not *building,* ordinance that required compliance with the notice and hearing requirements of Missouri law and City's Code of Ordinances. Lamar argues that the City's failure to comply with *zoning* ordinance requirements prior to passing the Pending Sign Legislation Ordinance renders it legally invalid.

*Mootness*

Before we reach this issue, however, we must address the threshold question of whether the issue presented is moot. *Claudia Lee & Assocs., Inc. v. Bd. of Zoning Adjustment,* 297 S.W.3d 107, 111 (Mo.App. W.D.2009). " '[M]ootness implicates the justiciability of a case.' " *Adams v. City of Manchester,* 242 S.W.3d

---

1. At the trial court, Lamar and CBS Outdoor, Inc. ("CBS"), a company also involved in outdoor signs, alleged that City altered or failed to follow the permit process to prevent the approval of these permits. The trial court ruled, however, that the proper avenue for challenging the permitting process is an appeal to the Board of Zoning Adjustment of Kansas City. The trial court's judgment concluded that "Plaintiffs have failed to exhaust the administrative remedies available to them and Defendant is granted summary judgment on this issue." Lamar does not appeal this finding (CBS appealed neither ruling), and consequently, our review is limited to the issue appealed by Lamar—the validity (or invalidity) of the Pending Sign Legislation Ordinance.

418, 428 (Mo.App. E.D.2007) (quoting *State ex rel. Reed v. Reardon,* 41 S.W.3d 470, 473 (Mo. banc 2001)). "It is well-settled that Missouri courts do not determine moot cases." *In re Estate of Washington,* 277 S.W.3d 777, 780 (Mo.App. E.D.2009). "Because mootness implicates the justiciability of a case, an appellate court may dismiss a case for mootness *sua sponte.*" *Armstrong v. Elmore,* 990 S.W.2d 62, 64 (Mo.App. W.D.1999). A case becomes moot when the issue presented seeks a decision by a court "upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." *Precision Invs., L.L.C. v. Cornerstone Propane, L.P.,* 220 S.W.3d 301, 304 (Mo. banc 2007).[2] Mootness is also implicated "when circumstances change so as to alter the position of the parties or subject matter so that the controversy ceases and a decision can grant no relief." *State ex rel. Monsanto Co. v. Pub. Serv. Comm'n,* 716 S.W.2d 791, 793 (Mo. banc 1986).

■ The question of mootness arises in this case because, by its very terms, the ordinance challenged—the Pending Sign Legislation Ordinance—is not presently applicable to the issue of whether or not Lamar's permits should be issued.[3] To the contrary, as of November 9, 2007, the "enacted" and "effective" (and applicable) ordinance is the Digital Sign Ordinance, and it is undisputed that Lamar is not entitled to its applied-for building permits under the terms of the Digital Sign Ordinance. As is discussed *infra,* it is well-settled in Missouri law that submission of an application for permit under a prior zoning ordinance—indeed, even the *issuance* of a permit under a prior zoning ordinance—is not enough to establish a vested right to the continued application of the prior zoning ordinance. Thus, if Lamar had not established a vested right to the proposed nonconforming use prior to the effective date of the Digital Sign Ordinance, Lamar was subject to the zoning restrictions of the Digital Sign Ordinance, and from a practical standpoint, the validity or invalidity of the Pending Sign Legislation Ordinance "would not have any practical effect upon any ... existing controversy."

### Vested Right to Building Permits in Missouri

Missouri examined the issue of whether a municipality may withhold the granting of a permit in *State ex rel. Oliver Cadillac Co. v. Christopher,* 317 Mo. 1179, 298 S.W. 720 (1927). In *Oliver,* a Cadillac dealership sued the City of Saint Louis for refusing to issue a building permit two days before a new zoning ordinance prohibiting commercial buildings took effect. *Id.* at 721. In finding that the property owner was not harmed by the city's refusal to issue the permit, the Missouri Supreme Court held:

> The fact that respondent filed its application for a permit before the ordinance

**2.** There are three exceptions to the mootness doctrine under which appellate courts may undertake a consideration of the merits of a moot appeal: (1) the case becomes moot after submission and argument; (2) where the decision of the lower court could have significant collateral consequences for a party to the appeal; or (3) the issue raised is one of general public interest and importance, recurring in nature, and that will likely otherwise evade appellate review. *Reiz v. Bd. of Zoning Adjustment of Kansas City,* 316 S.W.3d 331, 335 (Mo.App. W.D.2010); *Reynolds v. City of Valley Park,* 254 S.W.3d 264, 266 (Mo.App. E.D. 2008). None of these situations are present here.

**3.** As the text of the Pending Sign Legislation Ordinance dictates, said ordinance only applies "until such amendment [to City's Code of Ordinances] is enacted (effective)."

went into effect is no reason why it should not be held applicable to respondent from and after it became operative. Respondent held its property subject at all times to every valid exercise of the police power. *The filing of its application gave it no vested right.* Had the permit been granted on the date it was applied for, it would have conferred upon respondent no additional property right; it would merely have rendered respondent immune from prosecution for violation of the city's building code. *Id.* at 726 (emphasis added) (citation omitted). Subsequent to *Oliver*, the Missouri Supreme Court clarified its holding by finding that (1) "the mere granting of a permit to construct a building confers no *vested* right"; (2) new zoning regulations do not automatically revoke or cancel permits but only do so if the new regulation is specifically retroactive; (3) however, a municipality may revoke or cancel permits if there is no *vested* right in the permit. *Fleming v. Moore Bros. Realty Co.*, 363 Mo. 305, 251 S.W.2d 8, 14–17 (1952).

■ Finally, in *Claudia Lee*, an outdoor sign company appealed the decision of the City's Board of Zoning Adjustment ("zoning board") denying it a permit to construct a billboard based on the current ordinance. 297 S.W.3d at 109. Claudia Lee's argument on appeal was that the zoning board misinterpreted the term "premises" in the zoning ordinance. *Id.* at 110. *After* the zoning board's decision, but *prior* to the appeal, a *new* zoning ordinance was enacted which prohibited the billboard even under Claudia Lee's definition of "premises." *Id.* In finding that this change rendered Claudia Lee's appeal moot, we noted that "the new ordinance applied because *the mere filing of the application gave* the applicant *no vested right under the old ordinance.*" *Id.* at 112 (emphasis added). Furthermore, "[e]ven

the *issuance* of a permit does not confer vested rights on a landowner." *Id.* It is clear from the above cases and those which follow them that applying for or receiving a permit does *not* confer a vested right, and without such a vested right, a properly enacted zoning ordinance—even one adopted after a permit has been granted—controls the use of land unless the property owner has first established a valid nonconforming use. Consequently, we look to Missouri's law on nonconforming uses to determine what does establish a vested property right.

■ In Missouri, a valid nonconforming use is a use of property " 'which lawfully existed prior to the enactment of a zoning ordinance and is a vested property right.' " *Id.* (quoting *Storage Masters–Chesterfield, L.L.C. v. City of Chesterfield*, 27 S.W.3d 862, 865 (Mo.App. E.D.2000)). To demonstrate prior nonconforming use, and hence a vested right, an owner must show either actual use or a substantial step toward that use. *Id.* A substantial step must be something more than mere preliminary work. *Id.* The requirements to establish work that qualifies as a substantial step are rigorous. *State ex rel. Drury Displays, Inc. v. City of Shrewsbury*, 985 S.W.2d 797, 800 (Mo.App. E.D.1998) ("The test for establishing nonconforming use is rather strict. Neither the granting of a permit, nor the purchase or lease of land in reliance on existing zoning laws, will suffice to establish a nonconforming use such as would insulate land from the exercise of the zoning authority.") (citations omitted). *See also Claudia Lee*, 297 S.W.3d at 112; *McDowell v. Lafayette Cnty. Comm'n*, 802 S.W.2d 162, 164 (Mo. App. W.D.1990).

■ It is clear from these cases that to qualify for the nonconforming use exception, the use must be substantially established prior to the enactment of the law

that proscribes the activity. In addition, Missouri's law on nonconforming use exceptions requires the owner to have *reasonably relied* upon a belief that the existing law would continue to be in force.

It is without question that Missouri law requires *reliance* upon the law existing at the time that the nonconforming use was initiated, including initiation by application for permit. *Claudia Lee*, 297 S.W.3d at 112 ("Those cases indicate that a landowner does not develop a 'vested right' in a 'nonconforming use' that was compliant with prior zoning laws unless he has actually established use in reliance on the prior law."). Missouri courts also require that such reliance be *reasonable*. In *Fleming*, the Missouri Supreme Court stated:

> "A number of cases sustain the express or implied revocation of a building permit where, subsequent to its issuance, the city passes a valid ordinance which has the effect of prohibiting the erection of a building such as the one in question, and, under some decisions, this is true even though the grantee of the permit has entered into contracts, bought material, or incurred other expenses. * * * *The rule prevails particularly where a permit is obtained, not in good faith, but in anticipation of the enactment of a zoning law,* or an amendment thereto, or where the holder of the permit has done nothing of a substantial character toward the construction of the building before the enactment of the zoning ordinance or amendment."

*Fleming*, 251 S.W.2d at 16–17 (emphasis added) (quoting 58 AM. JUR. *Zoning* § 185 (1948)).

Similarly, in *Veal v. Leimkuehler*, the court upheld the decision of a zoning board finding that a property owner had not established a prior nonconforming use. 249 S.W.2d 491, 497 (Mo.App.1952).[4] In evaluating the evidence that the zoning board considered, the court noted that the property owner's

> good faith was brought into question by the revelation that *he anticipated some change in the zoning regulations and during the 30–day interval before the ordinance became effective had personal knowledge that a new zoning ordinance was going into effect.* It was during that interval that he claims to have begun the making of the alterations.

*Id.* at 496–97 (emphasis added).

*Lamar Has No Vested Right in the Sign Permits*

■■■■ In the present case, when Lamar applied for its sign permits on September 4, 2007, Lamar knew the Digital Sign Ordinance was scheduled for final reading and adoption two days later. In fact, the Digital Sign Ordinance was adopted on September 6, 2007. It follows under the authority of *Oliver* and *Claudia Lee* that Lamar cannot claim entitlement to some-

---

4. On transfer to the Supreme Court, *Veal v. City of St. Louis*, 365 Mo. 836, 289 S.W.2d 7 (1956), the Supreme Court did not emphasize that the subject zoning ordinance had been enacted *after* the permit was issued, though it did state, in addressing the jurisdiction of the Board of Adjustment that "the Board of Adjustment had jurisdiction and the power to review the act of the Building Commissioner in refusing to revoke the alteration permit, in this case where the real issue was whether or not plaintiff should have the right to a use different from that for which the property was zoned in the *subsequently enacted Zoning Ordinance.*" *Id.* at 12 (emphasis added). Though the Supreme Court did not exhaustively analyze whether the Building Commissioner had the authority to revoke the permit, it inherently assumed this power existed. *Id.* at 12–13. In the end, the Supreme Court decided the case on alternative grounds, concluding that the permit holder was bound by *res judicata* as a result of an earlier trial court finding that was adverse. *Id.* at 13.

thing (the issuance of permits) when the mere request for the same gave it no vested rights under the old zoning ordinance, *Claudia Lee*, 297 S.W.3d at 112, and even given that Lamar filed for permits before the new ordinance took effect, the permits would have been subject to the new Digital Sign Ordinance after it took effect, *Oliver*, 298 S.W. at 726. Further, even had the permits been issued, they could have later been revoked under the authority of *Fleming* and *Veal*.[5] In the end, Lamar was seeking to obtain permits "in anticipation of the enactment of a zoning law [i.e. the Digital Sign Ordinance]." This is not sufficient to establish a vested right in its proposed nonconforming use.

■ Because Lamar had not acquired a vested right in the sign permits at the time the Digital Sign Ordinance was passed and became effective, the issue of whether the Pending Sign Legislation Ordinance is valid or not has no practical effect upon the controversy with the City after November 9, 2007, the date the Digital Sign Ordinance took effect and became the applicable zoning ordinance with regard to Lamar's request for sign permits.

## Conclusion

Lamar's appeal is moot and hereby ordered dismissed.

JAMES M. SMART, JR., Presiding Judge, and CYNTHIA L. MARTIN, Judge, concur.

---

**5.** Even though the referendum initiative delayed the technical effective date of the Digital Sign Ordinance, the Digital Sign Ordinance had nonetheless been passed. Thus, it is highly unlikely that Lamar could have made a case that, in "good faith" or "reasonable" reliance on its permits (had they been issued on September 4, 2007), Lamar acquired a vested property right (i.e. valid nonconforming use) by virtue of expenditures to improve or modify their signs, as Lamar knew the newly enacted Digital Sign Ordinance had passed and the only reason it was not yet effective was because of Lamar's referendum initiative.