STATE of Missouri ex rel. FRED WEBER, INC., Appellant,

v.

The ST. LOUIS COUNTY, MISSOURI BOARD OF ZONING ADJUSTMENT, Respondent.

No. ED 87736.

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 7, 2006.

S. Kristina Starke, Assistant Public Defender, St. Louis, MO, for appellant.

Patricia Redington, County Counselor, Lorena Merklin von Kaenel, Assistant County Counselor, St. Louis, MO, for respondents.

Before GEORGE W. DRAPER III, P.J., GARY M. GAERTNER, SR., J., and ROBERT G. DOWD, JR., J.

PER CURIAM.

Appellant, State of Missouri, ex rel. Fred Weber, Inc. ("Weber"), appeals from the judgment of the Circuit Court of St. Louis County in favor of Respondent The St. Louis County, Missouri Board of Zoning Adjustment ("BZA"). The trial court affirmed the BZA's findings that Weber cannot stockpile recycled asphalt product ("RAP") on the portion of its land zoned under the conditional use permit 191 ("CUP 191"). We affirm.

Weber is a corporation that engages in the business of quarrying rock and stone and the processing of that rock and stone into asphalt. Weber's principal place of business is in St. Louis County. Weber has owned the property on which its business sits for over forty years, which predates St. Louis County's ("County") current zoning ordinances. Weber's property is divided into four sections, three of which are zoned under conditional use permits and one that is zoned as a planned industrial area. The only operation in the planned industrial area is an asphalt plant. All of the quarrying occurs on the other three tracts of land.

The area at issue in this case is the 225–acre portion governed by CUP 191, upon which Weber stockpiles its RAP. In February 2004 the County notified Weber that its stockpile of RAP violated SLCRO section 1003.107.3(9) ("zoning ordinance"). Weber protested, but the County persisted in its evaluation. Weber appealed to the BZA.

On May 19, 2004 the BZA held a public hearing, at which both Weber and the County presented witnesses and documentary evidence. Weber introduced testimony from its attorney and its vice president of operations. It also submitted affidavits from its president of materials and the president of a competing quarry company. The County introduced both testimony and a letter from the county counselor.

The BZA, without comment, approved the County's interpretation of the zoning ordinance. Weber filed a writ of certiorari to the circuit court, requesting, *inter alia*, that the court remand the case to the BZA for findings of fact and conclusions of law. The circuit court remanded the case and the BZA made findings and conclusions. Weber again appealed to the circuit court, which affirmed the BZA's decision. This appeal by Weber followed.

■ Appellate review of a contested agency decision is upon the findings of fact and conclusions of law of the agency, not the findings and conclusions of the circuit court. *Ode v. Board of Zoning Adjustment,* 796 S.W.2d 81, 83 (Mo.App. W.D. 1990). The scope of review is whether the decision of the zoning board was legal in the sense of being authorized by law and whether it is supported by competent and substantial evidence upon the whole record. *Eubanks v. Board of Adjustment,* 768 S.W.2d 624, 627 (Mo.App. E.D.1989). But when the decision of an administrative agency involves the interpretation of law and application of the law to undisputed facts, an appellate court reviews the agency's decision de novo. *Rau v. St. Louis County,* 69 S.W.3d 101, 103 (Mo.App. E.D. 2002).

■ In its first point on appeal, Weber argues that the BZA erred in finding that CUP 191 does not allow the stockpiling of RAP because RAP is not extracted from quarries. The BZA concluded that the plain language of both CUP 191 and the zoning ordinance does not permit the stockpiling of RAP.

■ CUP 191 permits the "excavation of raw materials[,] [q]uarrying or storage of rock or stone[, and] [s]tockpiling of extracted limestone or aggregates." The zoning ordinance permits the "[e]xtraction of raw materials from the earth and the processing of these raw materials, but not including the manufacturing of a product." SLCRO 1003.107.3(9). Thus, the BZA found, as a matter of law, that the stockpiling of RAP—an aggregate that is not extracted from the earth—is a violation of both CUP 191 and the zoning ordinance.

In determining the meaning of an ordinance or statute pertaining to zoning . . . the courts generally seek to ascertain the intention of the lawmakers by

giving the words used their ordinary meaning, by considering the entire act and its purposes, and by seeking to avoid unjust, absurd, unreasonable, confiscatory or oppressive results. *Suburbia Gardens Nursery, Inc. v. County of St. Louis,* 377 S.W.2d 266, 271 (Mo. banc 1964). When a zoning ordinance is clear, the court must give effect to its plain and ordinary meaning. *Home Builders Ass'n v. City of Wildwood,* 107 S.W.3d 235, 239 (Mo.banc 2003).

By reading both the zoning ordinance and CUP 191 together, it is apparent that in CUP 191, the term "extracted," which precedes "limestone or aggregate," applies to both of those words. To hold otherwise would render meaningless the zoning ordinance and the word "extracted" in the CUP. The zoning ordinance clearly states that only raw materials may be extracted from the earth and no product may be manufactured on that land. Therefore, the language in CUP 191, which states "extracted limestone or aggregates," conforms with the zoning ordinance only if we apply the term extracted to "aggregates."

Weber argues that this result is absurd because aggregates are not, and cannot be, extracted or found in nature, but rather are created from combining other materials. But that is irrelevant as to whether the stockpiling of RAP is in contravention of the zoning ordinance. Moreover, if the drafters of CUP 191 erred in their drafting, that does not justify the violation of a zoning ordinance. Therefore, the BZA did not err in finding that the stockpiling of RAP on Weber's property is in violation of CUP 191. Point denied.

■ In its second point on appeal, Weber argues that the BZA erred in finding that the stockpiling of RAP is not an accessory use to the primary, permitted use of quarrying rock and stone. The applicable provision of the County's zoning regulations for accessory uses states:

[A]ccessory ... uses are permitted in conjunction with ... a conditional land use or development when such accessory ... use is customarily found in conjunction with the primary use, is a reasonably necessary incident to the primary use, is clearly subordinate to the primary use, and serves only to further the successful utilization of the primary use. SLCRO 1003.107.4.

Because this provision is conjunctive, Weber must satisfy all four prongs in order to establish that the stockpiling of RAP is an accessory use to the quarrying business. The BZA found that Weber did not meet prongs one, two, and four and did not comment on the third prong.

■ Under the second prong, whether the stockpiling of RAP is a reasonably necessary incident to the primary, permitted use of quarrying rock and stone, Weber argues that although the stockpiling of RAP is not absolutely essential, the law does not require it to be absolutely essential. But a reasonably necessary incident is a "use or activity performed as *an integral and essential part* of the ... business even though it would not be a permitted use as an independent business or undertaking." *Suburbia Gardens,* 377 S.W.2d at 271 (emphasis added).

Weber, in its written appeal to the BZA, acknowledged that "quarry operations can be conducted without using RAP." Additionally, Weber stated, through its employees, that RAP is "not essential to the processing of quarried rock," but rather is an "integral component" and "element ... in the production of asphalt." Because Weber has not established that the stockpiling of RAP is a reasonably necessary incident to primary, permitted use of quarrying rock and stone, we find that Weber failed to meet this prong. Because the

statute required Weber to meet all four prongs and it has failed to meet this prong, we need not analyze the other prongs.

Therefore, because there is substantial and competent evidence supporting the BZA's decision that the stockpiling of RAP is not an accessory use, we find that the BZA did not err. Point denied.

Based upon the foregoing, we affirm the judgment of the trial court.