BOARD OF ALDERMAN OF The
CITY OF CASSVILLE, Missouri,
Plaintiff–Respondent,

v.

BOARD OF ADJUSTMENT OF
The CITY OF CASSVILLE
Missouri, Defendant,

and

Gerald T. Shaffer, Interested
Party–Appellant.

No. SD 31095.

Missouri Court of Appeals,
Southern District,
Division One.

March 20, 2012.

J. Michael Riehn, Cassville, MO, for Appellant.

Cordelia F. Herrin, David A. Cole, Cassville, MO, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Gerald T. Shaffer ("Shaffer") filed a "Variance Application," under the City of Cassville's ("the City's") zoning regulations, with the Board of Adjustment. The Board of Adjustment granted that variance request; however, the Board of Alderman for the City filed a Petition for Review in the Barry County Circuit Court. The court ultimately issued a judgment reversing the decision of the Board of Adjustment which had granted Shaffer a variance. The Board of Adjustment and Shaffer appeal. We review the findings and decision of the Board of Adjustment, not

the judgment of the circuit court. *State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City*, 24 S.W.3d 681, 684 (Mo. banc 2000). Pursuant to Rule 84.05(e): [1]

> If the circuit court reverses a decision of an administrative agency and the appellate court reviews the decision of the agency rather than of the circuit court, a party aggrieved by the circuit court decision shall file a notice of appeal and the record on appeal and shall file with the record on appeal a notice designating the party that is aggrieved by the agency decision. The party aggrieved by the agency decision shall file the appellant's brief and reply brief, if any, and serve them within the time otherwise required for the appellant to serve briefs.

 The Board of Alderman, then, has claimed error on the part of the Board of Adjustment. Our review is limited to determining whether the Board of Adjustment's decision is supported by competent and substantial evidence upon the whole record or whether the decision is arbitrary, capricious, unreasonable, unlawful, or in excess of the Board of Adjustment's jurisdiction. *Teefey*, 24 S.W.3d at 684. We view the evidence and reasonable inferences therefrom in a light most favorable to the decision and all questions of law are reviewed *de novo*. *Id.*

> In construing city ordinances, an appellate court applies the same general rules of construction as are applicable to state statutes. The cardinal rule for construing ordinances is to ascertain and give effect to the intent of the enacting legislative body. Words contained in an ordinance should be given their plain and ordinary meaning and should be interpreted to avoid absurd results. Where a phrase or term is specifically defined by ordinance, such particular definition is binding on the court and must be given effect.

*Id.* (internal citations omitted). Only where the Board of Adjustment exceeds its authority should the reviewing court hold the ruling to be illegal and void. *Id.*

The City's Municipal Code, section 400.260(F)(2)(a), provides, "There shall be a side yard on each side of the principal and accessory residential buildings having a width of not less than five (5) feet." The City provides for a procedure that enables a citizen to apply to the Board of Adjustment to get a variance from the ordinance restriction. The City's zoning regulations set out the procedure to be used by the Board of Adjustment when determining whether to grant a variance. The City's Municipal Code, section 400.760.2, provides:

> *Variances.* To authorize in specific cases a variance from the specific terms of this Chapter which will not be contrary to the public interest and where, owing to special conditions, a literal enforcement of the provisions of this Chapter will, in an individual case, result in unnecessary hardship, provided the spirit of this Chapter shall be observed, public safety and welfare secured, and substantial justice done.
>
> a. The applicant must show that his/her property was acquired in good faith and where by reason of exception [sic] narrowness, shallowness, or shape of this specific piece of property at the time of the effective date of the District Zoning Regulations, or where by reason of exceptional topographical conditions or other extraordinary or exceptional circumstances, that the strict application of the terms of the Zoning Regulations actually prohibits the use of his/her property in the manner similar to that of

---

1. All rule references are to Missouri Court Rules (2011), unless otherwise specified.

other property in the zoning district where it is located.

. . .

c. A request for a variance may be granted, upon a finding of the Board that all of the following conditions have been met. The Board shall make a determination of each condition and the finding shall be entered in the record.
(1) The variance requested arises from such condition which is unique to the property in question and which is not ordinarily found in the same zone or district; and is not created by an action or actions of the property owner or applicant[;]
(2) The granting of the permit for the variance will not adversely affect the rights of adjacent property owners or resident[;]
(3) The strict application of the provisions of the Zoning Regulations of which the variance is requested will constitute unnecessary hardship upon the property owner represented in the application[;]
(4) The variance desired will not adversely affect the public health, safety, morals, order, convenience, prosperity, or general welfare[;]
(5) The granting of the variance desired will not be opposed to the general spirit and intent of the Zoning Regulations.[2]

Shaffer is a resident of Cassville, Missouri, and owns real property within the city limits. His property is zoned residential, which has a side yard setback requirement of five feet. His lot is 54 feet wide by 125 feet deep. Shaffer is able to drive on the southwest side of his home because his home is not centered on the lot. Shaffer currently uses, for his driveway, an unpaved strip of land adjacent to the southern side of his home that is eleven and one half feet wide. The strip begins at the edge of his home and touches the property line; it also infringes on the setback restriction. There is no driveway, as such, simply a path on the grass that is worn due to vehicle use on the yard. Shaffer currently has two carports on his property: one in the backyard that was there when he moved in and one that he has recently constructed over the area that he uses as a driveway to his back yard. The carport that Shaffer constructed over his driveway infringes upon the setback restriction and is the subject of this action.

Shaffer applied for and was granted a variance from the City's zoning regulations by the Board of Adjustment in July of 2010, for the carport built within the five-foot setback restriction. Thereafter, the Board of Alderman appealed the decision to the circuit court. The court returned a writ of certiorari requiring the Board of Adjustment to: have a hearing on the record; provide the court with all documents, pleadings, and the record; provide certified copies of all documents relied upon by the Board of Adjustment to decide the issue; return a verified record of the review ordered; and provide a concise statement of the material and pertinent facts to show the grounds of the decision reached by the Board of Adjustment following the review of the variance.

Shaffer was again granted a variance by the Board of Adjustment. The Board of Adjustment found:

> As far as uniqueness we find that he does meet the uniqueness clause due to the size of the lot and location of the house and the driveway. Number two, adjacent properties, he meets that crite-

---

**2.** The Board of Alderman only challenges the Board of Adjustment's determination on the condition in section 400.760.2(c)(3).

ria. Hardship, he meets that due to the fact that it would be a hardship for his daughter and granddaughter to have to get out in the rain and snow when they have an opportunity now not to. Public interest is met. This is not a threat to public health, safety, morals, or order of convenience for the community. Spirit and intent, we discussed this one a long time. We feel that the spirit and intent of the zoning regulations are to provide for the growth and health and welfare of the public, however in this case the true zoning regulation is not going to harm anybody and he does meet that. And minimum variance, yes, this is the minimum variance. So therefore we again grant the variance for Mr. Shaffer.

The Board of Alderman again appealed to the circuit court; the circuit court reversed and set aside the Board of Adjustment's decision. The court held that Shaffer failed to show his property was subject to unique and practical difficulty which would create unnecessary hardship in carrying out the strict letter of the City ordinance, as required in section 89.090.1(3).[3] This appeal followed.

■■■ "Both the majority of courts and the commentators recognize two types of variances: an area (nonuse) variance and a use variance." *Matthew v. Smith,* 707 S.W.2d 411, 413 (Mo. banc 1986). Use variances are those which allow a landowner to use property in a manner that is not permitted under applicable zoning ordinances. *Id.* Non-use variances allow the landowner to use the property in a manner approved by the ordinance but allow the landowner to deviate from a restriction related to the permitted use and usually concern restrictions as to height of a structure, bulk of a structure, or setback from a property line. *Id.* Here, the parties agree

that the variance from a side yard setback restriction is a non-use variance. Generally, the authority to grant a variance should be exercised sparingly and only when exceptional circumstances are present. *Id.*

■■■ In Point I, the Board of Alderman challenged the finding of the Board of Adjustment that Shaffer's property was unique in its size as not supported by competent evidence. The City's Municipal Code, section 400.760.2(a), provides that Shaffer must show that his property is unique because of: (1) exceptional narrowness, shallowness, or shape; (2) exceptional topographical conditions; or (3) other extraordinary or exceptional circumstances, and that applying the five-foot setback restriction prohibits him from using his property in a manner similar to that of other property in the zoning district.

Shaffer testified that his lot is 54 feet wide and 125 feet deep; he stated that at least four other lots in his zoning district, including the lots directly to his north and south, are also 54 feet wide and stipulated that his lot is not unique in size when compared to the other lots in the neighborhood. Similarly, a map of the zoning district admitted into evidence shows that the majority of the lots in the zoning district are rectangular and the majority of the lots are 125 feet deep, the same as Shaffer's lot. His lot, therefore, is not unique in shape or shallowness when compared to the other lots in the zoning district. Shaffer did not testify that his lot was in any way unique topographically and, when viewing the maps in evidence, there are no distinguishing topographical conditions which would warrant relief from the variance restriction.

Shaffer also testified that his property is unique because he did not know of any

**3.** All references to statutes are to RSMo Cum. Supp.2008, unless otherwise specified.

other pieces of real estate located in the subdivision with the driveway in the five-foot setback.[4] He testified that the driveway was built for ingress and egress on the side of the home, that it has been there since before he purchased the property in 2007, and is the only one of its kind in his neighborhood, as far as he knows. When Shaffer constructed the carport over his driveway, he infringed on the setback requirement of the City. He created a unique attribute to his property as compared to other properties in the same zone or district. There was no evidence that other properties in the same zone or district had driveways or carports within the five-foot setback restriction.

Shaffer presented no evidence that the infringement was due to exceptional narrowness, shallowness, or the shape of his property, or that showed exceptional topographical conditions or other exceptional circumstances that prohibit him from using his property in the same manner as the other residents in his zoning district as required by the City's Municipal Code, section 400.760.2(a). The attributes of his property do not create the uniqueness, but his attempted use makes his property unique. Thus, the Board of Adjustment's decision that the property is unique is unsupported by competent and substantial evidence. Point I has merit.

■ In its second point, the Board of Alderman argue that the Board of Adjustment has failed to establish the third condition of the City's Municipal Code, section 400.760.2(c), because Shaffer has failed to show that removal of the carport will cause him unnecessary hardship. Specifically, the Board of Alderman argue that the Board of Adjustment's determination that "it would be a hardship for [Shaffer's] daughter and granddaughter to have to

get out in the rain and snow when they have an opportunity now not to" is unsupported by competent evidence.

■ An applicant for a non-use variance must show that following the strict letter of the applicable ordinance will cause him practical difficulties or undue hardships. *Baumer v. City of Jennings,* 247 S.W.3d 105, 113 (Mo.App. E.D.2008). "In deciding if there are practical difficulties, at the very least, a person seeking a non-use variance must demonstrate that, as a practical matter, the property cannot be used for a permitted use without coming into conflict with the restrictions contained in the ordinances." *Id.* The phrase "practical difficulties or undue hardships" does not refer to conditions personal to the owner of the land in question but rather refers to the conditions especially affecting the lot in question and must be different from that suffered throughout the zone or neighborhood. *Id.* The determination of whether practical difficulties or undue hardships exist is a factual matter that is reversible only for an abuse of discretion. *Id.* The power of a board to grant variances from zoning restrictions should be exercised sparingly and in accordance with the public welfare. *State ex rel. Branum v. Bd. of Zoning Adjustment of City of Kansas City, Mo.,* 85 S.W.3d 35, 39 (Mo. App. W.D.2002)

In *Volkman v. City of Kirkwood,* 624 S.W.2d 58 (Mo.App. E.D.1981), the plaintiffs, without obtaining a building permit, began construction of a carport on their home that violated a residential setback ordinance promulgated by the City of Kirkwood. *Id.* at 59–60. The construction was halted by the Building Commissioner and the plaintiffs applied for a variance from the setback ordinance arguing that, due to their excessively steep driveway,

---

**4.** The Board of Alderman does not challenge the use of the property as a driveway.

plaintiffs were forced to park on the street during inclement weather and causing them practical difficulties or undue hardship. *Id.* at 60. The Board of Adjustment denied the variance request. *Id.* When reviewing the Board of Adjustment's decision, the appellate court again denied the request reasoning, "[a]t most the condition of which plaintiffs complain can be called an occasional inconvenience. Legislation granting relief by way of variance to zoning codes is not intended to relieve mere occasional inconvenience." *Id.* at 61.

When asked if the exercise of the City ordinance would be fundamentally unfair to him, Shaffer testified, "Well, if I didn't have a drive there it would be. If I had to give up the drive." When asked if not having the carport would be a hardship to him, Shaffer testified, "No, I didn't apply under a hardship." When asked again, "It's not a hardship?" Shaffer responded, "No." Shaffer stated that he believed not having the carport would be a hardship to his daughter and granddaughter because they would get wet when walking from their vehicle to the home in the rain. He noted that his daughter and granddaughter had been living in the home without the second carport for two and a half years and would continue to live there relatively unaffected if it was removed.

Shaffer wishes to maintain the carport in order to park his car in his driveway without unnecessarily subjecting his daughter or granddaughter to rain or snow. As in *Volkman,* subjecting his daughter and granddaughter to rain and snow is nothing more than merely an occasional inconvenience. The Board of Alderman argues that Shaffer will not suffer hardship if forced to comply with the side yard setback restriction and remove the infringing carport. In support of their position, the Board of Alderman note that on Shaffer's variance application he checked "No" on the line concerning the hardship requirement, and that he testified "[he] didn't apply under a hardship." Shaffer also testified that he would suffer no hardship if the carport was torn down, and would only suffer hardship if the Board of Adjustment were to take away his driveway access. Accordingly, if the setback ordinance was strictly applied, requiring the newly constructed carport to be torn down, Shaffer would not suffer from unnecessary hardship. As such, the Board of Adjustment abused its discretion. Point II also has merit.

The points are granted. The decision of the Board of Adjustment is arbitrary, capricious, unreasonable, and unlawful. The judgment of the circuit court reversing and setting aside the decision of the Board of Adjustment is affirmed.

BURRELL, P.J., LYNCH, J., concur.