**BT RESIDENTIAL, LLC, Respondent,**

v.

**BOARD OF ZONING ADJUSTMENT OF KANSAS CITY, MISSOURI, Appellant,**

**American Tower Corporation, Appellant.**

**Nos. WD 74780, WD 74861.**

Missouri Court of Appeals, Western District.

Dec. 4, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 2013.

Application for Transfer Denied March 19, 2013.

James C. Bowers, Kansas City, MO, for Respondent.

Margaret Moran, for Appellant Board of Zoning Adjustment, Kansas City, MO.

Booker T. Shaw, St. Louis, Mo, for Appellant American Tower Corporation.

Before Division Two: JOSEPH M. ELLIS, Presiding Judge, ALOK AHUJA, Judge and MARK D. PFEIFFER, Judge.

JOSEPH M. ELLIS, Judge.

On July 16, 2010, the Department of City Planning and Development for the City of Kansas City ("the Department") issued a permit for the construction of a cellular tower at 707 N.W. 96th Street to the American Tower Corporation ("ATC"). In early August 2010, BT Residential, the owner of a neighboring property, became aware of the construction of the cellular tower after a 150–foot, steel pole was erected. BT Residential contacted the City to review the plans for the tower. On August 10, 2010, representatives for BT Residential met with members of the Department staff to discuss perceived violations of the Development Code.

On August 17, 2010, Jim Bowers, attorney for BT Residential, met with Tom Coyle, the Director of the Department. Bowers explained to Coyle why BT Residential believed that the building permit had been improperly issued because the cellular tower and equipment building on the property did not meet the requirements of the Development Code. On August 18, 2010, Bowers sent a follow-up email to Coyle setting out BT Residential's reasons for believing the permit to have been erroneously issued under Section 80-50(10) of the zoning code and asking the Department to issue a stop-work order and to revoke the permit. The following day, Department staff member Greg Franzen discussed the matter with Bowers on the telephone. On August 29, 2010, Bowers sent an email to Franzen indicating that he had not yet received a written response from the Department.

On August 30, 2010, Franzen sent Bowers an email stating:

My apologies if there was any miscommunication, I intended the written response to follow once information to allow a complete response was available. We have been unable to locate the documentation related to the demonstration of need provisions, but have been in contact with the applicant and now expect receipt by midweek. We will continue to follow-up with the applicant as needed, and will provide you an update once we have confirmed compliance to those provisions. In the meantime, following is information related to the setback requirements. In this case, due to the street footage, the north side of the parcel is the front.

This project was reviewed under the new KC Zoning & Development Code, Chapter 88.[1] This parcel is zoned R–80, in which the Use Group 'Wireless Communication Facility' is allowed. Section 88–385 specifies use standards for a wireless communications facility. Section 88–385–05 specifies requirements for freestanding towers, and section 88–385–05–B(1)(a) provides the required setbacks for the tower. The equipment building is considered to be an accessory structure under the provisions of section 88–305. Section 88–305–02–B requires that accessory structures in residential districts be setback 1.5 feet from the rear and side property lines. The project site plan indicates a setback in excess of that requirement for accessory structure [sic].

Please let me know if you have any additional questions.

On September 3, 2010, BT Residential filed an appeal with the Board of Zoning Adjustment for the City of Kansas City ("the BZA"). BT Residential claimed to be challenging "the determination of the City's Building Official, Greg Franzen, that the permit issued to American Tower Corporation for construction of a new cell tower complies with the City's Zoning and Development Code, Chapter 88." ATC filed a response opposing BT Residential's appeal and moving for dismissal of that appeal based upon it being filed out of time. In moving for dismissal, ATC noted that BT Residential had not filed its appeal within fifteen days of the issuance of the building permit or within fifteen days of discovering that such a permit had been issued.

After hearing argument and receiving evidence on the motion to dismiss, on January 11, 2011, the BZA entered its Find-

---

1. Chapter 88 of the Kansas City Code of Ordinances did not become effective and mandatory until January 1, 2011 but applicants were authorized to choose to proceed under Chapter 88 beginning December 1, 2009.

ings of Fact and Conclusions of Law dismissing BT Residential's appeal. The BZA concluded that Franzen's email was not an appealable decision under § 88–575–01 of the Zoning and Development Code of Kansas City[2] and that BT Residential's appeal was actually intended to challenge the determinations underlying the permit issuance. The BZA found that BT Residential was aware of the issuance of the permit by August 10, 2010, at the latest; that BT Residential failed to file its appeal within fifteen days of that date; and that the appeal was, therefore, untimely.

BT Residential filed a petition for *writ of certiorari* in the Circuit Court of Clay County challenging the BZA's decision. ATC intervened in that action. On December 12, 2011, the circuit court entered its judgment concluding that Franzen's email was an appealable determination by the Department to deny BT Residential's request that ATC's permit be revoked and that BT Residential's appeal had been timely filed within fifteen days of that determination. The circuit court determined that the BZA's dismissal of the appeal was improper and remanded the matter for a full hearing on the issues. ATC and the BZA both appealed from that decision.

"Appellate review of a contested agency decision is upon the findings of fact and conclusions of law of the agency, not the findings and conclusions of the circuit court." *State ex rel. Fred Weber, Inc. v. St. Louis Cnty., Bd. of Zoning Adjustment,* 205 S.W.3d 296, 298 (Mo.App. E.D.

2006). As the party aggrieved by the BZA's decision, BT Residential assumes the role of the appellant in this matter pursuant to Rule 84.05(e), and ATC and the BZA are treated as the respondents.[3] In its sole point on appeal, BT Residential contends that the BZA erred in dismissing its appeal because Franzen's email was an appealable determination by an administrative official and its appeal was filed within fifteen days of the issuance of that decision.

■ "We review zoning board decisions to determine whether they are supported by competent and substantial evidence on the record as a whole, or whether they are arbitrary and capricious, unreasonable, unlawful, or in excess of the Board's jurisdiction." *Reiz v. Board of Zoning Adjustment of Kansas City,* 316 S.W.3d 331, 334 (Mo.App. W.D.2010). "But when the decision of an administrative agency involves the interpretation of law and application of the law to undisputed facts, an appellate court reviews the agency's decision de novo." *State ex rel. Fred Weber, Inc.,* 205 S.W.3d at 298.

Section 88–575–01 of the zoning code provides that "[t]he board of zoning adjustment is authorized to hear and decide appeals where it is alleged there has been an error in any order, requirement, decision or determination made by an administrative official of the city in the administration, interpretation or enforcement of this zoning and development code."[4] Pursuant to § 88–575–03–A, "[a]ppeals of adminis-

---

**2.** All subsequent section references are to the Zoning and Development Code of Kansas City unless otherwise noted.

**3.** "While the decision reviewed on appeal is that of the [administrative agency] and not the circuit court, an appellate court reverses, affirms or otherwise acts upon the judgment of the trial court." *Bird v. Missouri Bd. of*

*Architects,* 259 S.W.3d 516, 520 n. 7 (Mo. banc 2008).

**4.** Similarly Article IV, Rule A(1) of the Rules and Regulations Governing the Procedure of the Board of Zoning Adjustment provide that the BZA may consider "[a]ppeals from any order, decision, or determination of the Director of City Planning and Development."

trative decisions must be filed within 15 days of the date of the decision being appealed."

Specific to building permits, Section 88–385–02 provides that "[t]he construction of a wireless communications facility requires a building permit." Section 88–530–08 states that "[t]he city planning and development director has final decision-making authority on minor site plan applications," and § 88–530–10–A provides that "[a] building permit application constitutes a minor site plan review." "Appeals of the city planning and development director's decision on a minor site plan application *may be taken to the city plan commission* by filing a notice of appeal with the city planning and development director. Appeals must be filed within 15 calendar days of the date of the city planning and development director's decision." *§ 88–530–12–A.* (emphasis added).

The zoning permit was issued to ATC on July 16, 2010. All parties concede that the Department's issuance of the building permit was an administrative decision or determination from which appeal could have been made.[5] *See State ex rel. Green's Bottom Sportsmen, Inc. v. St. Charles Cnty. Bd. of Adjustment,* 553 S.W.2d 721, 724 (Mo.App. E.D.1977).

BT Residential was made aware of the issuance of the permit at the latest on August 10, 2010, the date on which its representatives first met with Department staff. On August 18, 2010, Bowers sent an email to Coyle setting out BT Residential's reasons for believing the permit to have been erroneously issued and asking the

Department to issue a stop-work order and to revoke the permit. On August 30, 2010, Franzen sent Bowers the email, quoted *supra.* BT Residential's appeal to the BZA was filed on September 3, 2010.

BT Residential does not dispute the BZA's findings that it was aware of the issuance of the building permit by August 10, 2010, or that an appeal challenging the issuance of that permit would need to have been filed by no later than August 25, 2010, in order to be timely.[6] Rather, BT Residential claims that Franzen's August 29, 2010 email constituted an appealable administrative determination or decision under § 88–575–0 and that it timely appealed from that decision. Thus, the sole issue on appeal is whether Franzen's e-mail was a decision that could be appealed.

■ Section 88–15–09 provides that "[w]henever a provision appears requiring the head of a department or another officer or employee of the city to perform an act or duty, that provision will be construed as authorizing the department head or officer to delegate that responsibility to others over whom they have authority." Thus, if the Director (a) had the authority to revoke a building permit and (b) delegated that authority to Franzen, then Franzen could have made a decision on whether to revoke the building permit. Based on the record before us, there is nothing that establishes either to be the case.

■ BT Residential has not identified, nor has our review of those provisions of the City Zoning and Development Code that were entered into evidence uncovered,

---

5. Though the parties appear to be under the mistaken impression that appeal would have been to the BZA instead of the city plan commission.

6. *See State ex rel. Green's Bottom Sportsmen, Inc. v. St. Charles County Bd. of Adjustment,*

553 S.W.2d 721, 724–25 (Mo.App. E.D.1977)(holding that the time to file an appeal to the BZA commences to run when notice, actual or constructive, is given to the party affected by the order to be appealed).

any provision in the zoning code that grants the Director the authority to revoke a previously granted building permit based on considerations which existed at the time of the permit's original issuance. Chapter 88 of the Kansas City Code of Ordinances, entitled "Kansas City Zoning and Development Code," was the only portion of the city ordinances admitted into evidence. As this Court may not take judicial notice of the existence or content of city ordinances, *City of Kansas City v. Carlson,* 328 S.W.3d 323, 325 (Mo.App. W.D.2010), we can offer no opinion regarding whether the Director was granted the authority to revoke a building permit in the prior version of Chapter 88 or in any other provision of the city ordinances.

The only authority from this State cited by BT Residential in support of its claim that the director had the authority to entertain a request that a permit be revoked is *Veal v. City of St. Louis,* 365 Mo. 836, 289 S.W.2d 7, 12 (1956). In *Veal,* subsequent to the issuance of the permit to use the property as a mortuary, a new zoning ordinance was enacted reclassifying the property. *Id.* at 9. The Building Commissioner subsequently issued an alteration permit and occupancy permit allowing for the use of the property as a mortuary. *Id.* Neighbors filed an appeal to the Board of Adjustment seeking revocation of the alteration permit. *Id.* Later that same day, the Secretary of the Board of Adjustment wrote to the building commissioner advising him the filing of the appeal and asking "as to his action on such matters." *Id.* The building commissioner apparently indicated that he would not be revoking the permit either by express statement or inaction. *Id.* Subsequently, following a hearing, the Board of Adjustment found that the property owners had not established the use of the property as a mortuary as a non-conforming use and that the permit should be revoked. *Id.*

In addressing the property owner's claims on appeal, the *Veal* court stated in dicta, without citation to any authority, that "the Board of Adjustment had jurisdiction and the power to review the act of the Building Commissioner in refusing to revoke the alteration permit, in this case where the real issue was whether or not plaintiff should have the right to a use different from that for which the property was zoned in the subsequently enacted Zoning Ordinance." *Id.* at 12. The timeliness of the appeal was not at issue in *Veal.* Rather, the issue in *Veal* was whether prior litigation was *res judicata* in the action then before that court. The appeal to the BZA was made from the granting of the alteration permit. Moreover, we have no way of knowing what the St. Louis Zoning Code said in the 1950s in regard to the authority of the building commissioner to revoke permits. *See Jones v. Fireman's Fund Ins. Co.,* 792 S.W.2d 404, 408 (Mo.App. S.D.1990)("Courts may not take judicial notice of municipal ordinances."). As such, we do not find *Veal* persuasive on the issue of whether the Director of the Department of City Planning and Development for the City of Kansas City has authority to revoke a building permit.

Furthermore, even if the Director had the authority to revoke a building permit, it is unclear from the record before us that such authority was delegated to Franzen or for that matter, whether Franzen even purported to exercise such authority. While BT Residential argues that it can be inferred from the fact that Franzen handled communication with BT Residential following its request that the permit be revoked that the Director had authorized Franzen to decide whether to revoke the permit, the BZA was not required to make such an inference. In addition, the language contained in Franzen's e-mail can reasonably be interpreted as an explanation of the Director's decision to issue the

permit, as opposed to a decision whether to revoke that permit. Thus, the BZA could reasonably have concluded that Franzen's e-mail was not an appealable decision.

Moreover, the issues raised by BT Residential to Franzen all related to the propriety of the original issuance of the building permit and did not relate to any change or event occurring subsequent to the issuance of the permit. Thus, BT Residential was essentially asking for reconsideration of the Director's original decision to issue the permit, rather than revocation based on new circumstances or later developments. The zoning code clearly places a fifteen-day time limit on appeals made from administrative decisions.[7] As noted *supra,* under section 88–530–12–A of the zoning code, the Director's decision to grant a building permit must be appealed *to the city plan commission* within 15 days of the Director's decision. Were we to conclude that a party could request, at any time in the future, even though aware of the problem at an earlier date, that a building permit be revoked because it was improperly granted and obtain a hearing by the BZA, rather than the city plan commission, if that request was denied, section 88–530–12–A and its 15–day limitation would be rendered meaningless. Point denied.

The BZA's decision was supported by competent and substantial evidence on the record as a whole and was not arbitrary and capricious, unreasonable, unlawful, or in excess of the Board's jurisdiction. Accordingly, the circuit court's judgment reversing the BZA's decision is reversed.

All concur.

---

7.  *See § 88–530–12–A and § 88–575–03–B.*