

# Missouri Court of Appeals

## Southern District

### Division One

| | |
|---|---|
| THE STATE OF MISSOURI, ex rel., CUSHMAN PROPERTIES, LLC, and, CUSHMAN REAL ESTATE MANAGEMENT, LLC, <br><br> Respondents, <br><br> vs. <br><br> BOARD OF ADJUSTMENT OF THE CITY OF BRANSON, MISSOURI, <br><br> Appellant. | ) ) ) ) ) ) ) ) No. SD33271 ) ) FILED: November 19, 2014 ) ) ) |

APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Mark E. Orr, Judge

**<u>AFFIRMED</u>**

Citing § 70-17 of the city's sign code, Branson's Board of Adjustment denied Cushman's request to upgrade a backlit billboard to a digital sign face. Upon judicial review, the circuit court reversed and ordered the Board to grant the request. The Board appeals.[1] We affirm the circuit court's judgment in Cushman's favor.

---

[1] Because we review the decision of the Board, not of the circuit court, Rule 84.05(e) required Cushman to file the appellant's brief here. ***Bd. of Alderman of Cassville v. Bd. of Adjustment of Cassville***, 364 S.W.3d 246, 248 (Mo.App. 2012).

## Background

Relevant facts are not in dispute. Branson adopted a sign code ("Code") that restricted "off-premise" signs; *i.e.*, those promoting something not offered or sold at the premises where the sign is located.

Cushman's off-premise sign predated the Code, which treats such signs as "legal nonconforming":

- "nonconforming" – the sign lawfully existed before the Code limited off-premise signs;[2] and

- "legal" – the Code grandfathered nonconforming signs subject to Code § 70-17 limitations, including:

  - Code § 70-17(a)(1) – no nonconforming sign "may be enlarged or altered in any way which increases its nonconformity …."

  - Code § 70-17(b)(2) – a legal nonconforming sign loses its status if its "structure or size … is altered in any way except towards compliance with this chapter. This does not refer to change of copy, graphics, or normal maintenance."

Actions leading to the Board's involvement, and ultimately to this appeal, were succinctly summarized in two paragraphs of the Board's written decision:

> [Cushman's] permit request included provisions to renovate the existing off-premise sign. The current sign includes a twelve by eighteen foot (12' x 18') backlit billboard and a four by fourteen foot (4' x 14') message board. [Cushman] desired to replace the backlit portion with a digital face sign, which will require some electrical modifications because the digital sign requires more electricity than the current backlit sign.
>
> [Cushman's] permit request was denied by the Department Director, Jim Lawson, because the proposed change to replace the existing backlit sign with a digital display would significantly

---

[2] "Nonconforming use" means a land use lawfully predating a zoning ordinance "and which is maintained after the effective date of the ordinance even though not in compliance with use restrictions." **State ex rel. Dierberg v. Bd. of Zoning Adjustment**, 869 S.W.2d 865, 868 (Mo.App. 1994).

enhance the sign's capabilities by allowing for dynamic advertising through changing copy animation, etc., versus the current stationary advertising copy. Such an enhancement would increase the sign's degree of nonconformity, thus violating Branson's Municipal Code Section 70-17(a)(1) which states: "No such nonconforming sign may be enlarged or altered in any way which increases its nonconformity."

Cushman appealed to the Board, which held a public hearing, received documentary evidence, and heard from Cushman representatives and the City's Mr. Lawson. Three of five Board members voted in Cushman's favor, but the Code required four votes to reverse Mr. Lawson's decision. The Board's written decision stated that Cushman had failed to show that its proposal would meet "the standards of Section 70-17" for three reasons:

> [Cushman's] sign was not in the spirit of section 70-17, in that it would change the face of the billboard to allow for multiple advertisements to be presented, as compared to the current status of only one advertisement. Also, that the sign would likely require modernized electronics to be installed in order to support a modernized electronic billboard. Finally that the requested sign improvements would extend the life of the non-conforming use.

Cushman sought RSMo § 89.110 judicial review. The circuit court overturned the Board's decision as unsupported by law because Code § 70-17 does not prohibit the requested improvements, and arbitrary and capricious because the City has allowed others to convert signs from manually changeable to electronically changeable. The Board now appeals.

## Principles of Review

We review the Board's decision to determine whether it "is supported by competent and substantial evidence upon the whole record or whether the decision

3

is arbitrary, capricious, unreasonable, unlawful, or in excess of [the Board's] jurisdiction." ***Bd. of Alderman***, 364 S.W.3d at 248.

Our review is *de novo* because the Board's decision involved legal interpretation and the application of law to undisputed facts. ***BT Residential, LLC v. Bd. of Zoning Adjustment***, 392 S.W.3d 18, 21 (Mo.App. 2012).

Permit issuance is ministerial, not discretionary, and cannot be refused when applicable requirements are met. ***Curry Inv. Co. v. Bd. of Zoning Adjustment***, 399 S.W.3d 106, 109 (Mo.App. 2013).

## Analysis

### *The Board's Written Decision and Code § 70-17*

Two principles of construing zoning ordinances are "(1) the determination of what uses are permitted must be made on the basis of the wording of the particular ordinance, and (2) zoning ordinances, being in derogation of common law property rights, are to be strictly construed in favor of the property owner against the zoning authority." ***Rice v. Bd. of Adjustment***, 804 S.W.2d 821, 823 (Mo.App. 1991). *See also* ***Coots v. J. A. Tobin Const. Co.***, 634 S.W.2d 249, 251 (Mo.App. 1982), which describes the latter proposition as "widely accepted."

These principles doom the Board's stated reasons for denying Cushman's request, *i.e.*, multiple advertisements, modernized electronics, or a potentially longer nonconforming use. Code § 70-17, which we quote in full below,[3] bars none of these.

---

[3] Sec. 70-17. - Nonconforming signs.

4

*Other Board Arguments*

Perhaps recognizing this problem, the Board now asserts that its decision actually was (or could have been) based on sign restrictions in Code § 70-13(c)(5)(d), a provision never cited in the Board's decision or mentioned at the hearing. We reject this argument for several reasons.

First, this section is part of Code § 70-13, which sets out "[s]pecific regulations for sign overlay zones." Subsection (c) thereof, which includes § 70-13(c)(5)(d) now

---

(a) *Legal nonconforming signs.* Where a lawful sign exists at the effective date of adoption of the ordinance from which this chapter is derived (July 13, 1998) or amendment of this chapter that would be illegal under the terms of this chapter, such sign may be continued so long as it remains otherwise lawful, subject to the following provisions:

(1) No such nonconforming sign may be enlarged or altered in any way which increases its nonconformity, but any sign or portion thereof may be altered to decrease its nonconformity.

(2) Should such nonconforming sign or nonconforming portion of sign be destroyed by any means to any extent of more than 50 percent of its replacement cost at the time of destruction, it shall not be reconstructed except in conformity with the provisions of this chapter.

(3) Should such sign be moved for any reason for any distance whatever, it shall thereafter conform to the regulations for the district in which it is located after it is moved. When a permit has been obtained, temporary removal of any portion of a sign for repairs and maintenance shall not be considered to be in violation of this stipulation. Any sign temporarily removed by a public utility company, the city, or any governmental agency to accommodate repair or maintenance, or expansion operations may be replaced, provided there is no change in size, height or location of the sign. If any sign is moved as a direct result of a public street expansion, it may be relocated to a position determined by the city engineer to be appropriate in relation to the expansion project. No permit shall be required for such replacement.

(b) *Loss of legal nonconforming status.* A legal nonconforming sign shall lose this designation if:

(1) The sign is relocated or replaced; or

(2) The structure or size of the sign is altered in any way except towards compliance with this chapter. This does not refer to change of copy, graphics, or normal maintenance.

(c) *Maintenance and repair of nonconforming signs.* The legal nonconforming sign is subject to all requirements of this Code regarding safety, maintenance and repair.

cited by the Board, applies to "sign overlay zone 3." The Board admits that Cushman's sign is *not* within that zone.

Second, as already noted, the Board admits that this code section was never mentioned at the hearing or in the Board's decision.

A third reason relates to an alternative argument by the Board. The Code was in evidence, including § 70-13(c)(5)(d). Citing this support in the record, the Board asks us to affirm its decision, even if its stated reasons were flawed. Yet the Board itself describes § 70-13(c)(5)(d) nonconformity as "a matter for factual determination by the finder of fact" and admits that it made no such determination.

Under these circumstances, we are not free "to infer that an administrative agency found facts in accordance with the results reached." *Citizens for Rural Preservation, Inc., v. Robinett*, 648 S.W.2d 117, 126 (Mo.App. 1982). Administrative review is "unlike appeal from a judgment in a court tried case where review is de novo and the appellate court may assume that all fact issues on which no findings were made were found in accordance with the result reached (rule 73.01(b), V.A.M.R.)." *Stephen & Stephen Properties, Inc., v. State Tax Comm'n*, 499 S.W.2d 798, 804 (Mo. 1973).

> In administrative review, the court is bound by the agency's findings if supported by competent and substantial evidence and its scope of review is limited. For a court to infer findings from the ultimate decision of an administrative agency, defeats this limited review provision, as it allows the court to find both the law and the facts on appeal.

*Id*.; *see also* *Citizens for Rural Preservation*, 648 S.W.2d at 126.[4]

---

[4] Similar reasoning defeats the Board's argument that Cushman violated Code § 70-6(7) by not providing adequate information in its application. The City made no such claim in its initial

We need not reach other arguments for reversing the Board's decision, which is not supported by competent and substantial evidence. We affirm the circuit court's judgment in Cushman's favor.

DANIEL E. SCOTT, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

ROBERT S. BARNEY, SR. J. – CONCURS

denial letter or at the public hearing, nor did the Board's decision address this issue or Code section, so we cannot fact-find this issue under the cases and for the reasons cited above.