

# Missouri Court of Appeals

## Southern District

## Division One

EMERALD POINTE, LLC,               )
                                   )
    Plaintiff-Appellant,       )
                                   )
    vs.                        )    No. SD36725
                                   )
TANEY COUNTY PLANNING              )    **Filed:  April 8, 2021**
COMMISSION and TANEY COUNTY        )
BOARD OF ADJUSTMENT,               )
                                   )
    Defendants-Respondents.    )

### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Laura J. Johnson, Special Judge

### REVERSED AND REMANDED

Emerald Pointe, LLC ("Emerald Pointe") is the developer of Emerald Pointe subdivision (the "subdivision") located in Taney County.  The Taney County Planning Commission (the "Commission") entered a stop work order (the "Stop Work Order") against Emerald Pointe when it began Phase 12 of the subdivision.  Emerald Pointe filed an appeal of the Commission's issuance of the Stop Work Order to the Taney County Board of Adjustment (the "Board").  After the Board denied Emerald Pointe's appeal, Emerald Pointe filed a Petition in the Circuit Court of Taney County pursuing relief

against the Commission, the Board, and their individual members.[1] After an evidentiary hearing, the trial court affirmed the decision of the Board denying Emerald Pointe's appeal of the issuance of the Stop Work Order.[2] Emerald Pointe filed its timely Notice of Appeal.

Emerald Pointe brings two points on appeal, including: (1) a contention that the Board erred as a matter of law in (a) enforcing the grade requirements of its ordinance to private property and (b) that the Board is estopped from imposing strict compliance with the security requirements of the ordinance; and (2) that the Final Plat was overwhelming evidence which supported the conclusion that the Taney County Subdivision Regulations ("Subdivision Regulations") and Taney County Road Standards ("Road Standards") and the grade requirements did not apply to the private roads in Phase 12, the plat was approved in 2008, and it contains no reservations for security or grade requirements.[3] Because we find in favor of Emerald Pointe on Point I as a matter of law, we do not address Point II.[4]

---

[1] The trial court dismissed the Petition; however, this Court reversed the judgment of dismissal and remanded the case. *Emerald Pointe, LLC v. Taney County Planning Commission*, 578 S.W.3d 390 (Mo.App. S.D. 2019) ("*Emerald Pointe I*").

[2] At the hearing the individual defendants were dismissed without prejudice with the stipulation by the Commission and the Board that they would not later challenge that the circuit court did not have all the proper parties before it.

[3] The issues are complicated by the fact that the Commission required, if necessary pursuant to section 64.825 RSMo Cum.Supp. 2004, a bond to enforce compliance with the road standards. There is no issue that Emerald Pointe could provide a security bond if the grading requirements are not applicable to the subdivision. The issuance of the security interest bond is only relevant to the underlying issue whether Emerald Pointe must comply with the Road Standards. Therefore, we address that as the real issue in contention between the Board and Emerald Pointe – do the road requirements apply to the subdivision.

[4] Emerald Pointe contends in the alternative in Point I that the Board is estopped from imposing strict compliance with the security requirements of section 64.825 and Article 8, Section 6. Because we agree with Emerald Pointe's first contention, we do not address the argument regarding estoppel.

FACTS

On December 20, 1993, the Commission issued a Division III permit to Emerald Pointe's original developer, Gary Snadon, to develop 604 acres in a hilly, wooded, rural area of Taney County. Over the next 15 years, Emerald Pointe sought the Commission's approval for additional Division III permits. On May 19, 2008, the Commission issued a Division III Permit #2008-0029 authorizing Emerald Pointe to plat fifty (50) acres more or less into 160 residential lots, as Phase 12 of the subdivision. On September 17, 2008,[5] the Final Plat of Emerald Pointe Phase 12 was approved and signed by the Commission's Chairperson and the Planning Administrator, receiving the "Certificate of Approval by the Commission." The Commission approved and stated on the Final Plat "[t]his survey does not violate the rules and regulations of the Taney County Development Guidance Code."

> The Final Plat specifically states:
>
> All streets as shown hereon are not dedicated to the public and shall be private. Access along said road from public lake road #265-20 or Hill Haven Road and Sercy Drive to the subdivision[] is hereby granted to all existing and future lot owners. The county or local authorities shall assume no responsibility for improvements or maintenance thereof. All other easements are hereby dedicated to the public.
>
> IN TESTIMONY WHEREOF, the undersigned manager has hereunto set his hand this 15 day of July, 2008.
>
> EMERALD POINTE, L.L.C.
>
> ____[signature of Gary Snadon]_____
> Gary W. Snadon, Managing Member
>
> . . . .
>
> NOTES:

---

[5] The Final Plat was received, accepted and filed of record by the Recorder of Deeds, Taney County, on September 18, 2008.

All lots have a 25' building setback along all roads.  All lot[s] have a 7.5' sideyard setback and 10' rear setback.  All lots have a 15' utility easement along all roads.  All lots are subject to setback lines and utility easements by Taney County Planning Commission, Taney County, Missouri.  No access is permitted directly onto Hill Haven Road from the lots adjoining said Hill Haven Road.

Restrictive Covenants are filed of record and are recorded in the records of Taney County recorder's office in [Document #116] Book [Slide J] at Page [238].[6]

It is the twelfth and final phase that is at issue in this action.  At the time that Phase 12 was being implemented, all the necessary permits for construction were issued and extended.  Despite the permits and prior approval, the Commission caused a Stop Work Order to be entered on September 21, 2016 by the Taney County Planning Administrator.  Although the initial reason for the issuance of the Stop Work Order was for Emerald Pointe to provide a different form of security than had been provided in the past, the underlying reason for the Stop Work Order was the Commission's insistence that Emerald Pointe comply with the Subdivision Regulations and Road Standards.  The Commission indicated that Section 3:  Design Criteria and Standard, Section 3 Subsection 8 of the Road Standards addressing road grades had to be satisfied (those standards required engineering construction plans and standards for high density streets).  Specifically, the Commission determined that the roads had to have a grade of fifteen percent (15%) or less.  Emerald Pointe maintained that the streets were private streets on the approved Final Plat and that the local authorities assumed no responsibility for improvement or maintenance of any of the roads at issue.

---

[6] The Final Plat is labeled as document #116, then stamped twice (upper right and lower left) with a slide/page stamp.  One reads "Slide J, page 238" and the other "Slide J, page 237."

Point I

In its first point, Emerald Pointe contends the denial of their appeal to the Board was error because "Article 8, Section 6 of the Subdivision Regulations and grade requirements of Road Standard Section 3 Subsection 8 do not apply as a matter of law to private streets in a private, gated subdivision." The Commission and Board contend that all of the standards apply to all roads – including private roads – and the Stop Work Order was valid to enforce the standards. Thus, the issue before the Board and on appeal is whether the Road Standards regarding the grading of the roads,[7] as set forth in the Subdivision Regulations, apply to the private roads as set forth in the Final Plat. Under the facts before us, we agree that the road grading standards do not apply to the Final Plat approved in 2008.[8]

STANDARD OF REVIEW

We review the findings and decision of the Board, not the judgment of the circuit court. *Antioch Community Church v. Board of Zoning Adjustment of the City of Kansas City*, 543 S.W.3d 28, 33 (Mo. banc 2018); *State ex rel. Teefey v. Board of Zoning Adjustment of Kansas City*, 24 S.W.3d 681, 684 (Mo. banc 2000). The scope of judicial review is limited to a determination of whether the decision of the Board is authorized by law and is supported by competent and substantial evidence upon the

[7] The technical ability to enforce standards derive their authority from section 64.825 RSMo Cum.Supp. 2004. The Taney County Development Guidance Code (the "Code"), Subdivision Regulations and Road Standards set forth the legal requirements for development.

[8] The Commission and the Board contend that Emerald Pointe has not preserved this issue; however, it is clear that from the issuance of the Stop Work Order and the appeal of that order that Emerald Pointe notified the Commission that the imposition of the grading requirements contained in the Code, the Subdivision Regulations, and Road Standards did not apply to private roads contained in a private, gated community. That contention was and has been their defense to the Stop Work Order from the beginning. The issue was preserved for the Board and for this Court.

5

whole record. *Antioch*, 543 S.W.3d at 33-34. This Court determines de novo whether a decision is authorized by law as it is a legal question. *Id.*

In reviewing city ordinances, we apply the same general rules of construction as are applicable to state statutes. *State ex rel. Teefey*, 24 S.W.3d at 684. The general rule is to determine and give effect to the enacting legislative body's intent of the ordinance. *Id.* In an ordinance, the words contained therein should be given their plain and ordinary meaning. *Id.* "Where two statutory provisions covering the same subject matter are unambiguous standing separately, but are in conflict when examined together, a reviewing court must attempt to harmonize them and give effect to both." *City of Clinton v. Terra Foundation, Inc.*, 139 S.W.3d 186, 189 (Mo.App. W.D. 2004). The general statute must yield to the more specific statute where harmonization is impossible. *Id.*

Additionally, "'zoning ordinances, being in derogation of common law property rights, are to be strictly construed in favor of the property owner against the zoning authority.'" *State ex rel. Cushman Properties, LLC v. Board of Adjustment of City of Branson*, 453 S.W.3d 815, 818 (Mo.App. S.D. 2014) (quoting *Rice v. Board of Adjustment of Village of Bel-Ridge*, 804 S.W.2d 821, 823 (Mo.App. E.D. 1991)). The courts are to "'give weight to the interpretation that, while still within the confines of the term, is least restrictive upon the rights of the property owner to use the land as he wishes[,]'" where a zoning ordinance is susceptible to more than one interpretation. *Coots v. J.A. Tobin Construction Co.*, 634 S.W.2d 249, 251-252 (Mo.App. W.D. 1982) (quoting *Frank's Nursery Sales v. City of Roseville*, 295 N.W.2d 604, 608-609(4) (Minn. 1980)).

6

APPLICABLE CODE, SUBDIVISION REGULATIONS AND ROAD STANDARDS

We must look at the applicable Code, Subdivision Regulations and Road Standards to determine and give effect to the enacting legislative body's intent of the ordinance.

The Subdivision Regulations contain the following definitions:

**Article 2.  DEFINITIONS, INTERPRETATION and STANDARDS**

. . . .

**Section 9.  Definitions**

. . . .

**Plat – Final**

The final plan or drawing and any accompanying required data or information which is submitted to the Planning Administrator for final approval of a proposed subdivision and recording with the County Recorder of Deeds.

. . . .

**Public Improvements**

Those things that are constructed, installed or performed on public land, or on land that is to become public in the subdivision process, including but not limited to street and alley pavement, curbs, storm drainage facilities, sidewalks, sanitary sewers and water lines, and including the grading of such land.

. . . .

**Street, Private**

Street under private ownership, control and maintenance.  Requires covenants approved by the Planning Administrator to provide for maintenance.

The Road Standards provide the following definitions:

**SECTION 1**

**DEFINITIONS**

. . . .

26.    Public Improvements.  Those things that are constructed, installed, or performed on public land, or on land that is to become public in the subdivision process, including but not limited to street and alley pavement, curbs, storm drainage facilities, sidewalks, and sanitary sewers, and including the grading of such land.

. . . .

35.    Streets.  A way for vehicular traffic, whether designated with the suffix as a street, highway, thoroughfare, parkway, throughway, road, avenue, boulevard, lane, place, or however otherwise designated.

Further, the Road Standards address the differences between "Private Improvements" and "Gated Communities/Private Communities" for street construction in the following sections:

**SECTION 2**
**STREET REQUIREMENTS**

. . . .

**Section 13.  Private Improvements:**

1.  Private improvements, if any, shown on the public improvement plans, shall be clearly defined and marked as such.  These improvements will not be maintained by Taney County and, as such, an appropriate note shall be included on the drawings.

**Section 14. Gated Communities/Private Communities**

1.  Private streets in gated or private communities are encouraged to construct their roadway infrastructure to the same design requirements and specifications as public improvements.  If these communities are not built to these standards they may not be taken into the county maintenance program.

The Board contends that Article 2, Section 2(A) of the Subdivision Regulations negates any differences between public and private streets in the regulations:

8

**Article 2. DEFINITIONS, INTERPRETATION and STANDARDS**

. . . .

**Section 2. Conflict with Public and Private Provisions**

**A. Public Provisions**

The regulations are not intended to interfere with, abrogate or annul any other County Commission Order, rule or regulation, statute or other provision of law. Where any provisions of these regulations imposes restrictions, which differ from those imposed by any other provision of these regulations or any other County Commission Order, rule, or regulation or other provision of law, whichever provisions are more restrictive or impose higher standards, shall control.

Further, the Board contends Article 8, Section 2 of the Subdivision Regulations applies.

Specifically:

**ARTICLE 8. REQUIRED IMPROVEMENTS**

. . . .

**Section 2. Streets**

A.  Unless otherwise approved by the Planning Commission, *all streets shall be public streets*.

B.  Public streets shall be designed and constructed in accordance with the Taney County Road Standards

. . . .

F.  Private Streets

 1. *Private streets shall be permitted only with approval of the Planning Commission*.

 2. *Where private streets are permitted*, the restrictive covenants must contain provisions to assure maintenance of the streets, sidewalks, and other common improvements. Restrictive covenants must be approved by the Planning Administrator and must be recorded with the final plat.

 3. Only local streets may be designed as private streets.

4. *Private streets shall be constructed in accordance with Taney County Road Standards.* Any private street located within the ingress / egress / utility and drainage easement shall have the same width as the right-of-way provided for local streets in the Taney County Road Standards.

Article 8, Section 2 (emphasis added).

Appendix K of the Code (emphasis added) requires:

**1. General Provisions**

County road standards and requirements are defined and managed by the Taney County Road and Bridge department. *All construction must adhere to the current published standards set for[th] in the Taney County Road Standards.*

The Road Standards provide in part:

**SECTION 3**
**DESIGN CRITERIA AND STANDARDS**

. . . .

**Section 8. Grade and Curves:**

1. The minimum grade on curb and gutter streets shall be one-half percent (1/2%). *The maximum grade shall be* eight percent (8%) on arterials, twelve percent (12%) on collectors *and fifteen percent (15%) on local streets.*

(Emphasis added.) The Road Standards define "Local Street" as:

**SECTION 1**
**DEFINITIONS**

. . . .

19. Local Street. A street primarily providing direct access to abutting property and designed to accommodate low-volume, low-speed traffic.

ANALYSIS

It is clear from reading the Subdivision Regulations and the Road Standards that the legislative body in Taney County intended that there be such a thing as private roads with different design requirements and specifications than public improvements. Harmonizing Subdivision Regulations Article 8, Section 2(F) with Road Standards Section 2, Subsections 13 and 14, given their plain and ordinary meaning, indicates that Emerald Pointe's private streets, located in a private gated community, do not mandate the same design requirements and specifications as Public Improvements.

SUBDIVISION REGULATIONS

In the Subdivision Regulations, a differentiation is made between "Public Improvements" and "Street, Private." Public Improvements are defined as: "Those things that are constructed, installed or performed on public land, or on land that is to become public in the subdivision process, including but not limited to street and alley pavement . . . ." The term "Street, Private" is defined as a "[s]treet under private ownership, control and maintenance[,]" and maintenance is to be provided through covenants approved by the Planning Administrator.

Emerald Pointe has private ownership over the streets in Phase 12 as they were dedicated in the Final Plat as private streets with the county and local authorities assuming no responsibility for the improvements or maintenance. The restrictive covenants pertinent to Phase 12 were set forth and filed with the Recorder of Deeds in the Final Plat. Every street in Phase 12 is identified by name and location on the Final Plat and the words "Private" are delineated after each name. All streets in Phase 12 of the Final Plat were specifically dedicated as "private" streets. These streets were not

11

constructed on public land nor on land that was to become public.  Section 64.825 and Article 8, Section 6 of the Subdivision Regulations did not require security for improvements such as "private streets" that were not within the definition of "Public Improvements" under the Subdivision Regulations.

ROAD STANDARDS

In support of the Subdivision Regulations, the Road Standards dovetail with the definition of "Public Improvements" as "[t]hose things that are constructed, installed, or performed on public land, or on land that is to become public in the subdivision process[.]"  These definitions in the Road Standards express the intent that improvements are to be classified as either public or private.

Further, the Road Standards define "Private Improvements" and "Gated Communities/Private Communities."  The Road Standards specify that Private Improvements must be "clearly defined and marked as such" and would not be maintained by Taney County.  The Road Standards state the "[p]rivate streets in gated or private communities are *encouraged* to construct their roadway infrastructure to the same design requirements and specifications as public improvements."  (Emphasis added.)  Clearly, the Subdivision Regulations contemplated that there would be private roads in the planning of Taney County plats and roads.  The consequence of roads not being in conformance with the Road Standards is spelled out as "they may not be taken into the county maintenance program."

Article 8, Section 2(F)(4) of the Subdivision Regulations, which is cited by Respondents as supporting its position, requires that "[p]rivate streets shall be constructed in accordance with Taney County Road Standards."  That statement simply refers back to

12

the Road Standards. The Road Standards provide for public improvements and private improvements. Persons constructing private streets in gated or private communities are only "encouraged" to construct their roadway infrastructure to the same design requirements and specifications as public improvements. Thus, the option of allowing private streets is set out in every provision of the Subdivision Regulations and the Road Standards.

CONCLUSION

Taney County had the statutory authority to enact the Code, Subdivision Regulations, and Road Standards. They did so. When Emerald Pointe came into existence in 1993 as a subdivision and requested a permit for Phase 12 in 2008, Emerald Pointe was in conformance with the Road Standards and Subdivision Regulations for Taney County. At that time, the Commission was fully aware of the terrain of the property and yet approved a plat which called for "private streets" in Phase 12. The Road Standards create an exception to their public standards with the language, "unless otherwise approved by the Planning Commission, all streets shall be public streets." The Commission approved Emerald Pointe's private streets.

Because Emerald Pointe was given the authority to develop Phase 12 of the initial plat, the Commission did not have the authority to enter the Stop Work Order in 2016. The Board's contention eight years after its initial approval of Phase 12, that there is no difference between private roads and public roads, is not consistent with the Road Standards and Subdivision Regulations. The designations regarding private and public streets would have no meaning if we construe the Road Standards and Subdivision Regulations in the manner suggested by Respondents. Thus, the fifteen percent (15%) or

13

less grade requirement of the Road Standards and any additional road specifications at issue here are not required for Phase 12 of Emerald Pointe. The Board's decision to affirm the Commission's Stop Work Order's grading requirements for Phase 12 is not authorized by law.

Emerald Pointe's Point I is granted. For the foregoing reasons, we reverse the judgment of the circuit court with directions that the cause be remanded back to the Board with directions that the Board grant Emerald Pointe's appeal of the Commission's Stop Work Order.

Nancy Steffen Rahmeyer, P.J. – Opinion Author

Jeffrey W. Bates, J. – Concurs

William W. Francis, Jr., J. – Concurs